BAKER CONTRACTOR, INC., v. CHRIS NELSEN & SON, INC.

1. INDEMNITY—SUBCONTRACT FOR SEWER CONSTRUCTION.
   Provision of subcontract for sewer construction that subcontractor agreed to indemnify and hold harmless the general contractor from all liabilities, claims, or demands for injury or damage to any person or property arising out of the performance of this contract did not afford a basis for defense to action by the subcontractor for cost of repair to the structure occasioned by the action of defendant general contractor in placing spoil banks too close to the excavation.

2. APPEAL AND ERROR—QUESTIONS REVIEWABLE.
   Issue, raised for the first time on appeal, is not discussed by the Court of Appeals, since the issue was not raised by defendant before the trial court.

3. CONTRACTS—CONSTRUCTION OF INDEMNITY CLAUSE—INTENT.
   Interpretation of an indemnity clause is guided by ascertaining what the parties intended with reference thereto at the time they executed the agreement in which it was included.

4. INDEMNITY—CONSTRUCTION OF CLAUSE.
   An indemnity clause is construed most strictly against the party who drafts it and the party who is indemnitee.

5. SAME—SCOPE OF CONTRACT—BREACH OF IMPLIED PROMISE NOT TO HINDER PERFORMANCE.
   An indemnity clause in a contract that is designed to hold the indemnitee harmless was not intended to effect such a result occasioned by the indemnitee's own breach of implied promise not to hinder or obstruct the work comprising performance of the indemnitor.

Appeal from Oakland; Dondero (Stanton G.), J. Submitted Division 2 June 9, 1965, at Detroit.

REFERENCES FOR POINTS IN HEADNOTES
[1, 3–5]  27 Am Jur, Indemnity §§ 13–15.
[2]  5 Am Jur 2d, Appeal and Error § 545.

(Docket No. 256.)    Decided September 20, 1965. Rehearing denied November 3, 1965.  Leave to appeal denied by Supreme Court January 24, 1966. See 377 Mich 697.

Declaration by Baker Contractor, Inc., against Chris Nelsen & Son, Inc., for damages incurred when a storm sewer, for which plaintiff was a construction subcontractor, collapsed and plaintiff had to rebuild.  Verdict and judgment for plaintiff. Defendant appeals.  Affirmed.

*Coulter, O'Hara & Coulter (John P. O'Hara, Jr.,* of counsel), for plaintiff.

*Alexander, Buchanan & Conklin (John Kruse,* of counsel) and *Maurice A. Merritt,* for defendant.

WATTS, J.  This action was a civil suit for damages arising out of an alleged breach of implied promise.  It was heard in Oakland county circuit court by jury.  A judgment was entered for plaintiff. From this judgment defendant appeals.

In 1959, defendant Chris Nelsen & Son, Inc., was awarded a job of constructing a storm sewer for the city of Dearborn.  On May 21, 1959, the defendant entered into a subcontract with plaintiff by which plaintiff was to pour the concrete storm sewer in a trench to be prepared by defendant.  Defendant, in excavating, placed the spoil at the side of the excavation.

After the job was under way and while plaintiff was pouring, there were three occurrences which damaged the storm sewer.  On August 15, 1959, there was a small spill when part of a spoil bank slid into the freshly poured sewer.  On September 24, 1959, there was an upheaval at the bottom of the excavation, damaging some inverts and some

length of the sewer line. Both parties participated in clearing away the damage. The construction work continued and on October 10, 1959, there was a second upheaval. This damage was cleared away and the sewer was completed. There was evidence in the record from which a jury could find that the occurrences were the result of defendant's negligence in placing the spoil banks too close to the excavation.

The record indicates that plaintiff was paid the contract price for construction of the sewer. In the lower court, plaintiff sued for and won damages for the extra expense involved in construction due to the breach by defendant of an implied term in the contract. The amended declaration of plaintiff stated:

"Defendant's actions constituted a breach of defendant's contract with plaintiff. Necessarily implied in defendant's contract was a promise that it would do nothing which would hinder or obstruct plaintiff in the performance in its part of the contract."

The written contract between plaintiff and defendant contained an express provision as follows:

"The subcontractor agrees to indemnify and hold harmless Chris Nelsen & Son, Inc., from all liabilities, claims, or demands for injury or damage to any person or property arising out of the performance of this contract."

It is on this indemnity clause that defendant relies on appeal.

The main issue on appeal is whether or not the indemnity clause in the contract is a defense to the breach of contract found by the lower court. We hold that it is not.

Before discussing the main issue, it should also be noted that defendant raises the following issue, stated in its brief:

"Must one who contracts absolutely and unqualifiedly to erect a structure for a stipulated price, bear the loss occasioned by the accidental destruction of that structure before completion?"

We find from examining the record that this issue is raised for the first time on appeal. Since this issue was not raised by defendant before the trial court, it is not available on appeal. *Therrian* v. *General Laboratories, Inc.* (1964), 372 Mich 487.

We now examine the main issue. This suit was tried and decided on the basis of breach of the implied promise of defendant not to "hinder or obstruct" the work comprising the performance of plaintiff.

Chris Nelsen & Son, Inc., relies for its defense on the previously stated indemnity clause in the written construction contract.

The indemnity clause in the contract between plaintiff-appellee and defendant-appellant is before this Court for interpretation.* The question is: What did the parties to the written contract intend with reference to the indemnity clause at the time they executed the agreement in view of the project involved?

We cannot subscribe to the contention of defendant that the indemnity clause was meant to cover the situation which defendant here claims it covers. We do not think that such a clause, which is one frequently used in construction contracts, was conceived to be used to indemnify a tort-feasor against the breach of his duty in the situation found here by the jury in the lower court. Nor has the search

---

* See 3 Corbin on Contracts, § 532 *et seq.*

of the record and of Michigan cases shown that such an indemnification was contemplated. This type of clause has traditionally been used to indemnify one of the contracting parties against tort liability to third parties. In no case has such a clause been successfully used to protect one contracting party from liability to the other when dealing *inter se,* with no third party plaintiff concerned. In the cases in which this clause has been cited and discussed, the liability is concerned with third parties. In the instant case, the two contracting parties, both construction companies, are dealing face to face, and the liability goes to their basic contractual relationship, one with the other. The case primarily relied on by defendant is clearly distinguishable from the instant case, being involved with a third party plaintiff. *Buffa* v. *General Motors Corporation* (ED Mich, 1955), 131 F Supp 478.

The defendant's attempt to use what is a commonly encountered indemnity clause as a defense to its own breach of contract is an ingenious argument, but one which we cannot accept. It is clear from the way such clauses have been used that they may protect the indemnitee with regard to harm done to third parties. *Buffa* v. *General Motors Corporation, supra.* It is also clear, however, that such clauses are construed most strictly against the party who drafts them and the party who is indemnitee. *Michigan Chandelier Co.* v. *Morse* (1941), 297 Mich 41; *In re Traub Estate* (1958), 354 Mich 263. In this case, the Nelsen company is both drafter and indemnitee.

Judgment affirmed. Costs to appellee.

LESINSKI, C. J., and BURNS, J., concurred.