EBERTS CADILLAC COMPANY *v.* MILLER.

1. CORPORATIONS—PERIOD OF GRACE—DEFAULT—LIABILITY OF OFFICERS.

Liability of officers for debts of corporation contracted during period of default in filing of report as required by statute does not attach during 10-day period of grace allowed by statute after time designated for filing of report; hence, action which was commenced within 2 years of expiration of grace period was timely (CL 1948, §§ 450.87, 450.90).

2. PLEADING—AMENDMENT—RELATION BACK TO ORIGINAL.

An amendment of a pleading relates back to the date of the original pleading whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction,

REFERENCES FOR POINTS IN HEADNOTES

[1, 4, 9] 19 Am Jur 2d, Corporations § 1265 *et seq.*
[2] 41 Am Jur, Pleading § 315.
[3] 19 Am Jur 2d, Corporations § 1094.
[5] 39 Am Jur, Parties § 23.
[6] 5 Am Jur 2d, Appeal and Error § 668 *et seq.*
[7] 5 Am Jur 2d, Appeal and Error § 726.
[8] 17 Am Jur 2d, Continuance §§ 3, 4; 53 Am Jur, Trial §§ 15, 16.
[10] 5 Am Jur 2d, Appeal and Error § 839 *et seq.*

or occurrence set forth or attempted to be set forth in the original pleading, since the opposite party has been made aware of the claim sought to be enforced (GCR 1963, 118.1, 118.4).

3. CORPORATIONS—OFFICERS—DIRECTORS—TERM OF OFFICE.

A corporate officer or director retains his office until properly replaced by his successor.

4. SAME—OFFICERS—DIRECTORS—ATTEMPTED RESIGNATION.

An officer of a corporation which is in default who attempts to terminate his relationship with the corporation should not contribute further to the default by leaving it without seeing that the default is cured and that a properly qualified successor replaces him (CL 1948, § 450.87).

5. PARTIES—REQUESTED DISMISSAL OF A DEFENDANT.

Denial of requested dismissal of 1 person as defendant after an officer of plaintiff corporation testified he did not know why the person was joined as a defendant was proper, the inability of the witness to understand the law sufficiently to explain the legal liability of the defendant not being grounds for dismissal.

6. APPEAL AND ERROR—RECORD—TRIAL COURT'S RULINGS.

No unfairness or prejudice on part of trial judge in making various rulings is found on record submitted in action by creditor of corporation in default in which directors and officers are sought to be held individually liable for corporate debts (CL 1948, § 450.87).

7. SAME—QUESTIONS REVIEWABLE.

Issues raised for the first time on appeal are not reviewed by the Court of Appeals.

8. TRIAL—ADJOURNMENT—DISCRETION OF COURT—LIABILITY OF DEFENDANT CORPORATE OFFICERS.

Denial of adjournment requested by defendants in order to obtain certain records *held,* not an abuse of discretion, where information sought would not affect defendants' liability to plaintiff, a creditor of corporation in default of which defendants were officers (CL 1948, § 450.87).

9. CORPORATIONS—OFFICERS—FINDINGS OF FACT—EVIDENCE.

Findings of fact of trial judge that defendants were officers of a corporation at the time indebtedness was incurred while the corporation was in default in filing its annual report,

and therefore were personally liable for the debt by statute *held*, not clearly erroneous or contrary to the great weight of the evidence, where there was evidence that all 3 defendants were officers of the corporation at all times prior to an agreement transferring stock ownership, no meeting of shareholders or directors was held to elect different officers, the transaction transferring ownership of stock was not a shareholder's or stockholder's meeting, 1 defendant owned 100 shares or more at all times, another defendant tendered his resignation as secretary at time when corporation was in default in filing its annual report, no successor secretary was elected, 2 automobiles were purchased from plaintiff during time of default, an open account for purchases of parts by corporation from plaintiff during period of default exceeded the amount claimed, the 3 defendants failed to submit resignations as directors and officers, there was no proof of corporate meetings by reason of absence of corporate records, and they failed to terminate properly their status as corporate officers (CL 1948, § 450.87).

10. APPEAL AND ERROR—TRIAL COURT—FINDINGS OF FACT.
    Findings of fact shall not be set aside unless clearly erroneous; regard should be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it (GCR 1963, 517.1).

Appeal from Osceola; Peterson (William R.), J. Submitted Division 3 December 5, 1967, at Grand Rapids. (Docket No. 3,214.) Decided March 26, 1968. Leave to appeal denied June 20, 1968. See 381 Mich 756.

Action by Eberts Cadillac Company, a Michigan corporation, against James Miller, Jack Miller, and Joseph Lynch to enforce statutory personal liability as officers of corporation for failing to file reports. Judgment for plaintiff. Defendants appeal. Affirmed.

*Warner, Norcross & Judd* (*Jack R. Clary*, of counsel), for plaintiff.

*Robert L. Miles*, for defendants.

HOLBROOK, P. J.   This action was brought to recover for purchases made by a corporation during a time when it was in default in filing its annual report.   In the declaration, the defendants were alleged to have been officers of the corporation at the time and therefore subject to personal liability.[1] Plaintiff herein commenced the instant action on May 21, 1962, based on failure of defendants to file an annual report due May 15, 1960.   Defendants moved to dismiss because of the 2-year statute of limitations provided in the act.[2]   Upon denial of the motion to dismiss, the defendants appealed to the Supreme Court which affirmed the circuit court in *Eberts Cadillac Co.* v. *Miller* (1963), 372 Mich 172.

Defendants' present substituted counsel then made a second motion to dismiss based on the failure of plaintiff to properly allege that the indebtedness of the corporation to plaintiff was incurred during the period of defendants' "neglect or refusal" to file the required annual report.   The trial court in denying the motion granted leave to plaintiff to amend its declaration.

Plaintiff filed an amended declaration dated June 24, 1964, which included an allegation "that the $9,811.31 indebtedness was created during a period when said corporation was in default as to filing its annual report and fees, and said defendants being officers of said corporation having 'neglected or refused' to join in the making of such report and by virtue of section 87 of the Public Acts of 1931, No 327, as amended, said officers of said corporation are personally liable to the plaintiff on said indebtedness."   Defendants requested leave to appeal to the Supreme Court from such denial with leave being denied.   Defendants assert on this appeal that the

---

[1] CL 1948, § 450.87 (Stat Ann 1963 Rev § 21.87).
[2] CL 1948, § 450.90 (Stat Ann 1963 Rev § 21.90).

amended declaration stated a new cause of action, was filed after the statute of limitations had run against the claim, and therefore was improperly permitted. This question was raised and determined adversely to defendants' position herein in the case of *LaBar* v. *Cooper* (1965), 376 Mich 401, 404-409. Also, see *Huizenga* v. *Yellow Transit Freight Lines, Inc.* (1965), 2 Mich App 36, 41; GCR 1963, 118.1 and 118.4.

Defendants raise 7 questions for review which are in part restated as follows:

(1) Did the lower court err in denying the motion of defendants to dismiss the action and in permitting plaintiff to amend itself into a cause of action long since barred? This question has been decided above.

(2) Did the lower court err in denying the motion of defendants during trial to dismiss the action as to defendant Joseph Lynch?

(3) Did the lower court err in denying the motion of defendants to dismiss the action at the close of plaintiff's proofs and at the conclusion of trial?

(4) Were the rulings of the lower court on objections of counsel prejudicial to defendants' case?

(5) Did the lower court err in making findings of fact at the immediate conclusion of trial, without arguments or briefs?

(6) Were the lower court's findings of fact contrary to the great weight of the evidence?

(7) Assuming the findings of fact to be correct, were the trial court's conclusions of law justified?

In order to deal properly with the questions raised by defendants, we deem it advisable to quote from the trial court's opinion as follows:

"The court has already dictated its finding of facts upon the record at the conclusion of the trial. A brief summary of those findings is as follows:

"Defendant James Miller financed the reorganization of Chewning Motors in 1956, causing it to be incorporated with 400 shares of common stock issued. He retained 200 shares and sold 100 shares each to one Chewning and Donald Holcomb. Miller became president, his attorney, defendant Joseph Lynch who handled the incorporation, became secretary, and defendant Jack Miller, Chewning and Holcomb also assumed corporate offices. The five also made up the board of directors and all took an active part in the business in one way or another.

"Chewning's conduct, having apparently been unsatisfactory, in 1958 James Miller ousted him and reclaimed his stock by a technique not established in the testimony. Neither Chewning or Holcomb had paid for their stock, and it was apparent that Miller felt it to be his to do with as he pleased.

"After some negotiations, an agreement was executed on April 1, 1958, rather cursorily stating that James Miller was the owner of all of the stock of Chewning Motors and setting forth an agreement that:

"(1) Holcomb was purchasing three-quarters of the stock at a price of $45,000.

"(2) Holcomb also was agreeing to purchasing the remaining one-fourth of the shares within 5 years at a price of $15,000, but would have no ownership or voting rights until such time as he purchased the remaining one-quarter;

"(3) Holcomb executed a note for $60,000 in payment for all of the shares upon terms stated in the agreement;

"(4) Miller agreed to transfer three-quarters of the corporate shares at the time of the agreement, and the remaining one-quarter was to be transferred when the first three-quarters was paid for and the three-quarters was to be pledged as security for the note.

"Three-quarters of the shares were in fact transferred forthwith to Holcomb and it may well be that

the remaining one-quarter has never been transferred. The only testimony bearing on this was that of Lynch whose testimony was not credible.

"No corporate stockholders' or directors' meeting preceded the agreement and no meeting was held on April 1, 1958. It was the finding of the court that there was no corporate stockholders' or directors' meeting thereafter.

"On May 14, 1959, the Michigan annual corporation report was executed by Holcomb as president and his wife, Dawn, as treasurer. It shows Lynch as secretary, the Millers as vice presidents, and all five as directors. The only change, in other words, was the substitution of Mrs. Holcomb for Chewning as a director, and a change in corporate offices for the Millers being replaced by Holcomb and his wife. No corporate reports were filed thereafter.

"Both of the Millers ceased to have anything to do with the corporation after April 1, 1958, except for the one-quarter stock interest retained by James Miller. They have never submitted resignations as officers. They have never submitted resignations as directors, and, as noted, there have been no stockholders' meetings or directors' meetings. After the corporation was in default, on June 8, 1960, Lynch wrote Holcomb tendering his resignation as a corporate officer and director.

"No corporate records were produced. Neither of the Holcombs were witnesses. There was testimony by defendant Lynch that he saw corporate minutes of later date indicating the election of new officers and directors, but the testimony is not credible.

"This is suit on an open account in the amount of $946.75 and for the proceeds of two bad corporate checks totaling $8,864.56 issued in February of 1961 to the plaintiff. Plaintiff seeks recovery from the Millers and Lynch under CL 1948, § 450.87 (Stat Ann 1963 Rev § 21.87), which provides:

" 'Any officer or officers of such corporation so in default who has neglected or refused to join in mak-

ing of such report   *   *   *   shall be liable for all debts of such corporation contracted during the period of such neglect or refusal.'

"The question then is this: Are corporate officers and directors who take no steps to terminate their status as such, but simply abandon the corporation by ceasing to attend meetings and ceasing to perform the duties of their office, for whom no successors are elected, liable under the statute when the corporation subsequently is in default for failure to file its annual report?

"The answer must be yes. A position of corporate trust, like a marriage, is not terminated merely by leaving the tent. Adequate protection of the myriad rights and interests involved in the sophisticated world of modern commerce requires something more than an Arabian directness and simplicity. It is to protect such interests that the statute exists. *Radio Electronics Supply Company* v. *Smith* (1964), 372 Mich 393. To insure orderliness, as well as to locate corporate responsibility with certainty, a corporate officer or director retains his office until properly replaced by his successor (barring, perhaps, some particular bylaw peculiarly bearing on the problem). *Mahlen Land Corporation* v. *Kurtz* (1959), 355 Mich 340; *Voorhies* v. *Walker* (1924), 227 Mich 291. Among the responsibilities of corporate offices, is the duty to see that the office is properly transferred into other hands.

"No case precisely in point seems to arise in Michigan, but there are cases of like nature from other jurisdictions. In *Deming* v. *Puleston* (1873), 55 NY (10 Sickles) 655, a corporate officer, against whom proceedings were brought under a statute similar to that here in question, defended on the ground that his term as trustee had expired when the debt was contracted. The court held as follows:

" 'The term for which defendant was elected had expired, but no new trustees had been elected and defendant subsequently acted as a trustee. Held,

that defendant was trustee *de facto,* and, as such, it was incumbent upon him to aid in making the report, and for the failure he was liable.' * * *

"Defendants cite *West Leechburg Steel Co.* v. *Smitton* (1937), 280 Mich 180. The case may, however, be easily distinguishable from the instant case. In *West Leechburg,* plaintiff sought to impose statutory liability upon a director who had never served as a director and who had no knowledge that she had been elected to the position. This is considerably different than the case of one who knows that he has corporate office and does not sufficiently attend to the office to insure that he has properly vacated it and that the powers of corporate management are safely vested in other hands. *West Leechburg* quotes with approval from 2 Fletcher on Corporations, which quotation includes a reference to liability of those who hold over in corporate office.

"Defendants attack the basic premise of the court's conclusion, however, by asserting that it may be inferred that there were in fact corporate meetings which resulted in the election of other directors and officers. As justifying such inference, they point to the 1959 annual corporation report which shows Donald Holcomb as president and Dawn Holcomb as treasurer of the corporation. It may as easily, however, be inferred that Holcomb merely adopted the title of corporate president and his wife that of corporate treasurer without any formal meetings and the court finds this, in fact, to be the case. When all is said and done, the Millers and Lynch are chargeable with knowledge that on April 1st, 1958, they were still corporate officers and they were still corporate directors, and James Miller continued thereafter to be a corporate stockholder.

"One final question remains, namely that whether the attempted resignation of defendant Lynch after the corporation was in default was effective to preclude liability for obligations arising thereafter. In several New York cases, an officer who has resigned

has been exonerated from liability under the statute as in *Boughton* v. *Otis* (1860), 21 NY 261 and *Shaler & Hall Quarry Company* v. *Bliss* (1863), 27 NY 297. In both instances, however, the resigned officer had, in fact, been replaced.   On the contrary, however, as noted in *Seebeck* v. *King* (1901), 34 Misc 483 (70 NYS 322), a director who attempted to resign but did not accomplish that purpose and who was not, in fact, replaced, was held liable under the statute.

"The Michigan statute makes any officer of a corporation in default, who has himself neglected or refused to join in the making of a report, liable for *all debts* of the corporation 'contracted during the period of such neglect or refusal.'  It may be contended that the 'period of such neglect or refusal' ended when the corporate office ended, and that thereafter having resigned, the officer had no duty to assist in or join in the making of such a report.   A more logical view, however, is that an officer attempting to terminate his relationship with the corporation which is in default ought not contribute further to the default of the corporation by leaving it, (a) without seeing that the default is cured, and (b) without seeing to a proper qualification of his successor.

"Accordingly, a judgment may be entered in favor of the plaintiff against all of the defendants."   (Emphasis supplied.)

2. Dealing specifically with the questions raised, we turn to defendants' second question.   Counsel requested dismissal of Mr. Lynch as a defendant after the testimony of one of the officers of plaintiff as follows:

"*Q.* Then the actual answer is that you don't know why you joined Mr. Lynch as a defendant?  Is that not true?
"*A.* It would only be an assumption."

The instant action was based upon the statute and plaintiff's counsel had charge of the pleadings.   The

witness's inability to understand the law sufficiently to explain the legal liability of defendant Lynch is not grounds for dismissal.

3. Defendants made a motion for directed verdict to dismiss the action at the close of plaintiff's proofs and renewed the motion at the conclusion of trial. There was a *prima facie* case presented by the plaintiff in its proofs at the time the first motion was made, *i.e.,* all 3 defendants appeared in the evidence as officers of the corporation at the time the indebtedness was incurred, and no corporate annual report had been filed May 15, 1960. The denial of the motion at the conclusion of the case was proper. The findings of fact of the trial judge were sufficient to justify the decision in plaintiff's favor. We will further deal with this claimed error in discussing defendants' question 6.

4. Counsel has referred this Court to numerous pages in the transcript in which it is asserted that the trial judge in his rulings exhibited unfairness and prejudice to the defendant's case. We have examined the claimed errors occurring in the court's rulings and without relating to each one specifically, we find no unfairness or prejudice exhibited therein by the trial judge.

5. Defendant now complains that the trial court made findings of fact at the immediate conclusion of trial without hearing arguments or receiving briefs. The transcript reveals the following colloquy at the end of the findings of fact by the trial judge:

. "A trial brief has been submitted by Mr. Clary. I haven't had an opportunity to read it. Mr. Miles hasn't had the opportunity to prepare a brief, but I am sure he will submit a copy to Mr. Clary so he can reply. Now, is there any area in which there ought to be findings of fact which have not been announced?

"*Mr. Clary.* Does the court make a finding of fact concerning ownership of Chewning Motors after 1958?

"*The Court.* There is no evidence of any change prior to the filing of the annual report.

"*Mr. Miles.* Your Honor, insofar as findings of fact, there is only one matter that I have. I cannot personally recall whether it came out in the evidence, but I think it was inferred that the reason Mr. Chewning was discharged was not because of any corporate matter, but because of matters concerning him personally.

"*The Court.* I drew the impression from the testimony that Mr. Miller didn't think he was attending to the business, but I don't think it is really relevant. All right. Thank you, gentlemen."

This Court fails to find where defendants' counsel interposed objection to the procedure followed by the trial judge. We do not review claimed errors occurring during the course of trial when raised for the first time in this Court. *Baker Contractor, Inc.,* v. *Chris Nelsen & Son, Inc.* (1965), 1 Mich App 450.

Counsel for defendant did ask for additional time to obtain plaintiff's records concerning dealership agreements with Chewning Motors, Inc. The trial judge in not granting adjournment for this purpose did not abuse his judicial discretion. The information as disclosed on the agreements would not affect defendants' liability herein, nor would such information preclude the instant action against the officers of the corporation under the statute.

6. Defendants assert that the findings of fact of the trial judge were against the great weight of the evidence requiring reversal. It is true that there was conflicting testimony. However, there was adequate evidence in the case for the trial judge to base his findings of fact, *viz.,* the undisputed testimony that the 3 defendants were officers of the corporation at all times prior to April 1, 1958; that no meet-

ing of the shareholders or directors was ever held
electing different officers of the corporation; that the
transaction of April 1, 1958, as shown by the agree-
ment (defendants' exhibit B) was not a directors'
or shareholders' meeting; that James T. Miller was
the owner of 100 shares or more of stock at all times;
that the resignation of Mr. Lynch as secretary in
June of 1960 as shown by defendants' exhibit A,
was tendered at a time when the corporation was in
default in filing its annual report due May 15, 1960;
that no successor secretary was elected; that the
purchase by Chewning Motors, Inc., of 2 Cadillac
automobiles was made during time of default in Feb-
ruary of 1961 from plaintiff, payment for them be-
ing made by 2 checks that were dishonored for non-
payment; that an open account for purchases of
parts by the corporation from plaintiff during the
period of default exceeded the amount claimed there-
for; that the 3 defendants failed to submit resigna-
tions as directors; that the defendants Miller failed
to submit resignations as officers; that there was
a lack of proof of corporate meetings by reason
of absence of the corporate records; and that the
3 defendants failed to terminate properly their sta-
tus as corporate officers.

GCR 1963, 517.1 states in part:

"Findings of fact shall not be set aside unless
clearly erroneous. In the application of this prin-
ciple regard shall be given to the special opportunity
of the trial court to judge the credibility of those
witnesses who appeared before it."

We cannot say that the facts found by the trial
judge are clearly erroneous. We conclude that the
findings of fact were not contrary to the great weight
of the evidence.

7. The trial judge held that the defendants were
officers of the corporation prior to April 1, 1958, and

that they were not replaced at that time or at any time thereafter at a meeting of the shareholders or board of directors. The law of Michigan is settled that corporate officers hold over in their positions until replaced at a new election. *Mahlen Land Corporation* v. *Kurtz, supra; Voorhies* v. *Walker, supra; Kent County Agricultural Society* v. *Houseman* (1890), 81 Mich 609, 613. See also, 2 Fletcher, Corporations (perm ed 1964), § 344. The defendants, being officers of the corporation at the time of default when the indebtedness was incurred, became liable under the statute by their neglecting to file the report required. No error is shown in the conclusion of law of the trial judge.

Affirmed. Costs to Appellee.

BURNS and J. H. GILLIS, JJ., concurred.