Donald **WHEELER** and Minnie Wheeler, his wife, Plaintiffs,

v.

**E. I. DuPONT de NEMOURS**, a Delaware corporation, Defendant and Third-Party Plaintiff,

v.

**SHENANGO CONSTRUCTION COMPANY**, a Pennsylvania corporation, Third-Party Defendant.

Civ. A. No. 5337.

United States District Court
W. D. Michigan, S. D.

Sept. 9, 1968.

Hathaway, Latimer, Clink & Robb, Muskegon, Mich., John H. Martin, Muskegon, Mich., of counsel, for defendant and third-party plaintiff.

Cholette, Perkins & Buchanan, Grand Rapids, Mich., William D. Buchanan, Grand Rapids, Mich., of counsel, for third-party defendant.

## OPINION

FOX, District Judge.

This action is before the court on motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Third party defendant seeks dismissal of third party plaintiff's claim on the grounds that it is entitled to favorable judgment as a matter of law. This case calls for interpretation of a contract between third party plaintiff, DuPont, and third party defendant, Shenango. It arises from the following facts:

DuPont owns and operates a chemical plant in White River Township near Montague, Michigan. On or about February 1, 1962, DuPont entered into a contract with Shenango, for the latter to furnish labor, supervision, and other items for the construction and completion of piping and plumbing work at DuPont's acetylene and Freon facilities near Montague.

The principal plaintiff, Donald Wheeler, was employed by Shenango as a pipefitter. On June 25, 1964, while working in a meter pit on a cast iron return water line, Donald Wheeler was severely and permanently injured when a pipe on which he and other employees were working suddenly failed and detached in a violent manner. Donald Wheeler and his wife, Minnie Wheeler, brought suit against DuPont for injuries arising from this accident.

The contract between DuPont and Shenango contains an indemnity clause designated as "Condition 19." I will discuss the substance and the exact language of this indemification clause later in this opinion.

DuPont impleaded Shenango for recovery of damages based on this indemnification agreement. Thereafter, the claims of Donald and Minnie Wheeler were settled and paid by DuPont for the sum of $65,000 and $23,000, respectively. Shenango was given opportunity to participate in the settlement negotiations.

Originally, Shenango moved for summary judgment on the whole case, bas-

ing its motion on the pleadings, a pretrial statement (Court Document Number 35), and its contract with DuPont. Subsequently, DuPont amended its third party complaint, and Shenango amended its answer. These later pleadings raise genuine issues of material fact, namely, questions of negligence and contributory negligence of the principal plaintiff, DuPont and Shenango. In turn, answers to these questions will determine whether the indemnity provision of the contract applies in the first instance.

For purposes of the instant motion, we must assume the indemnity provision applies.

Assuming negligence of Shenango's payroll employees, the sole question is the meaning of "third parties" as used in the contract's indemnity clause. Are Wheeler and his wife third parties within the meaning of Condition 19 of the contract?

The sole question for determination here is the meaning of "third parties" as that term is used in the contract between DuPont and Shenango. DuPont claims Wheeler and his wife are "third parties"; Shenango claims they are not.

In this posture, the problem is primarily one of contract interpretation. The general rule is to ascertain the intention of the parties, and for this purpose we may look to the four corners of the contract.

Paragraph 9 of the contract provides as a general condition:

"Contractor shall be responsible for persons engaged by him on the work. None of said persons shall constitute employees of DuPont."

To effect this provision, Paragraph 10 provides in part:

"Contractor assumes full responsibility for the payment of all Federal and State Social Security and Unemployment Compensation taxes or charges for all employees engaged by Contractor in the performance of this contract. The cost of such taxes or charges shall be reimbursable.

"Contractor agrees he has qualified or will qualify as an employer subject to the Unemployment Compensation Law of the State in which work is performed and that he will require each of his subcontractors, if any, to do the same.

"Contractor shall carry on a reimbursable basis insurance in minimum limits stated as follows: (A) Workman's Compensation—Statutory * * "

Paragraph 19 provides indemnity for DuPont in the following language:

"In connection with performance of the work hereunder, Contractor agrees to be responsible for damage to the persons and property of third parties and for damage to the property of DuPont (excluding that in the Contractor's custody and control) where such damage is caused by the negligence of personnel employed on the contractor's roll. Contractor further agrees to hold DuPont harmless from loss for such damages.

"Contractor agrees that the terms of this Division 19 will be effective despite any rulings or findings to the effect that personnel on Contractor's roll are in fact the agents or employees of DuPont."

To insure the effectiveness of Paragraph 19, Paragraph 10 (referred to above) further provides:

"Contractor shall carry * * * (B) Public Liability Bodily Injury $100,000/$300,000, (C) Public Liability Property Damage $100,-000/$300,000, (D) Contractual Liability Insurance in Bodily Injury Limits of $100,000/$300,000 and Property Damage Limits of $100,-000/$300,000 to cover (1) Indemnification Agreement contained in Provision 19 hereof, and (2) the Agreement of Indemnification (Form 1796) required to be executed if Contractor elects to make use of DuPont's emergency first-aid and related services, (E) Protective Public Liability Bodily Injury and Property Damage insurance, in the aforementioned limits in

the event any subcontractor is employed. Subcontractors, if any, shall carry the insurance specified under (A), (B) and (C) above. Except as provided for in the following paragraph, no other insurance will be reimbursable unless required by or approved by DuPont * * *

"* * * Certificates indicating that this insurance is in effect and a statement that the insurance companies will not cancel or reduce the coverage without first giving DuPont ten (10) days' written notice, must be filed with DuPont before starting work, and shall be subject to DuPont's approval. Certificates shall be accompanied by a verification of rates and noted for any exclusions."

On reading Paragraphs 9, 10, and 19 together, it appears that the drafter intended to place the risk on Shenango for losses incurred in three different situations.

The first is property damage to DuPont's own property caused by negligence of Shenango's personnel. This is provided for in Paragraph 19. Paragraph 10 requires Shenango to carry insurance covering the loss.

The second is damages to persons and property of third parties. This is also provided for by Paragraph 19, and again, Paragraph 10 requires Shenango to carry insurance covering this loss.

The third is damage to Shenango's employees. This is indicated by Paragraph 9, which says Contractor shall be responsible for his employees; and Paragraph 10, which requires Shenango to carry the statutory Workmen's Compensation.

The contract provides specifically for injuries to Shenango's employees. This indicates that it was the intention of the drafter not to include Shenango's employees in the general class defined by Paragraph 19 as "third parties." It seems more likely that third parties were intended to be those persons, other than employees, who might come in contact with Shenango during its work at

DuPont's plant and suffer damage as a result. To cover this risk, Shenango was required to carry public liability and property damage insurance in the amounts of $100,000/$300,000.

DuPont argues, however, that the term "third parties" was meant to include everyone but the contracting parties. It bases this argument on the traditional terms, first, second and third party, as they are used in the law of contracts. The first and second parties are parties to the contract; all others are third parties.

■ In any case, under both Michigan and Pennsylvania law, the terms of this contract should be strictly construed against DuPont. This was the ruling of a recent Michigan Court of Appeals decision, Geurink v. Herlihy Mid-Continent Co., 5 Mich.App. 154, 146 N.W.2d 111 (1966).

In addition, this was the ruling in Pittsburgh Steel Company v. Patterson-Emerson-Comstock, Inc., 404 Pa. 53, 171 A.2d 185, at Page 188. The Pittsburgh Steel case has very strong language on the proposition that indemnity clauses of this nature should be strictly construed. 171 A.2d at 187–188.

Guerink was an action by an employee of a subcontractor against a general contractor for injuries sustained on the job. The general contractor filed a third party complaint against the subcontractor based on an indemnity agreement between them. In the agreement the subcontractor had agreed to indemnify the general contractor for all liability and judgments arising from personal injuries suffered by subcontractor's employees while on the work site.

Deciding for the subcontractor, the court said at 146 N.W.2d 113:

"The general rule in the interpretation of all contracts is to ascertain the intention of the parties. Klever v. Klever (1952) 333 Mich. 179, 52 N.W. 2d 653. Indemnity clauses are construed most strictly against the party who drafts them and the party who is the indemnitee. Baker Contractor v.

Nelsen, Inc. (1965) 1 Mich.App. 450, 136 N.W.2d 771."

In the Pittsburgh Steel case, supra, the court said at 171 A.2d 189:

"In the instant case the indemnity clause is expressed in broad, general terms. However, there is no clearly expressed or unequivocal language in the clause of indemnity to show that indemnification for its own negligence was intended. Moreover, plaintiff drew this contract 'and therefore if its meaning is ambiguous or reasonably susceptible of two interpretations, it must be construed most strongly against the party who drew it. [Citations omitted.]' "

The contract before the court certainly contemplated Michigan's Unemployment Compensation Law, because it required the contractor to provide Workmen's Compensation for his employees. Thus, the parties were aware of Michigan's Workmen's Compensation Law, and certainly must have been aware of the very strong language in the Workmen's Compensation Act. As discussed in Wall v. Studebaker Corp., 219 Mich. 434, 189 N.W. 58 (1922), the Act originally provided:

"Any employer who has elected with the approval of the industrial accident board, hereinafter created, to pay compensation as hereinafter provided, shall not be subject to the provisions of section one; nor shall such employer be subject to any other liability whatsoever, save as herein provided for the death of or personal injury to any employee, for which death or injury compensation is recoverable under this act, except as to employees who have elected in the manner hereinafter provided not to become subject to the provisions of this act." Comp. Laws 1915, § 5426.

After amendment in 1943 [P.A.1943, No. 245], Section 4 of Part 1 now reads:

"Sec. 4. Where the conditions of liability under this act exist, the right to the recovery of compensation benefits, as herein provided, *shall be the*

*exclusive remedy against the employer."* (Emphasis supplied.) M.S.A. § 17.144, Comp.Laws 1948, § 411.4.

In Husted v. Consumers Power Company, 376 Mich. 41, 135 N.W.2d 370, the Wall decision is discussed, and reference is made to Justice Bird and Justice Fellows, who participated in that decision. 135 N.W.2d at 375. Justice Bird at one time was Attorney General of the State of Michigan. At that time it was the function of the Attorney General to advise the legislature. As legal advisor to the legislature, Justice Bird spoke with a unique understanding of the intent of the legislature in drafting the Workmen's Compensation Act, particularly of its exclusive nature relating to remedies against the employer, and remedies available to employees.

■ With that strong language in mind, simple reference to third parties is insufficient to make an indemnity provision binding on an employer. In Cox v. E. I. DuPont de Nemours and Company, 39 F.R.D. 47 (W.D.S.C., 1965), a case in which the court had before it an indemnity provision identical to the one in the instant case, the court observed at page 53:

" * * * Armstrong in its contract with duPont agreed to indemnify duPont for injuries to 'third parties.' *As to Armstrong, Cox was not a third party but an employee."* (Emphasis supplied.)

■ Certainly, as between employer and employee with an employer being a party to the contract, the third party language is wholly inadequate to make effective an indemnity provision against the employer, in this case Shenango.

On this analysis, Wheeler, as an employee of Shenango, is not a third party within the meaning of that term, as it is used in Shenango's contract with DuPont. Thus, Shenango should not be held to indemnify DuPont for the $63,000 damages which it paid to Wheeler.

On the other hand, Wheeler's wife is a third party within the meaning of the contract. I am aware of the derivative

nature of Mrs. Wheeler's claim and of Shenango's argument. I have considered that argument. Yet under the facts of this case, although her claim arises out of injury to her husband, her damages are personal to her. They are loss of conjugal services, society, companionship, happiness of her husband, and nursing services which she is required to render to her husband.

As such, they are damages personal to a third party, as the term is used in the contract. Thus, Shenango may be held to indemnify DuPont for the damages which it paid to Minnie Wheeler.

Therefore, third party defendant's motion for summary judgment is granted as to the claim of Donald Wheeler, and denied as to the claim of Minnie Wheeler.

It is so ordered.