MILLER-DAVIS COMPANY v AHRENS CONSTRUCTION, INC

Docket No. 284037. Submitted June 9, 2009, at Grand Rapids. Decided
     August 4, 2009, at 9:05 a.m.

> Miller-Davis Company, the general contractor and construction
> manager for the construction of a natatorium housing an indoor
> pool at a YMCA complex, brought an action in the Kalamazoo
> Circuit Court against subcontractor Ahrens Construction, Inc.,
> and its bondsman, Merchants Bonding Company, alleging breach
> of contract as a result of faulty workmanship when installing a
> wooden roofing system covering the natatorium. Ahrens (hereaf-
> ter defendant) moved for summary disposition on the basis that
> the action was barred by the statute of repose, MCL 600.5839.
> Merchants also sought summary disposition on the basis that the
> plaintiff failed to comply with a condition precedent to suit under
> the performance bond. The court, William G. Schma, J., denied
> both motions, but only addressed Merchants' argument. The
> Court of Appeals, BANDSTRA, P.J., and SAWYER and NEFF, JJ., denied
> the defendant's application for leave to appeal in an unpublished
> order, entered March 6, 2006 (Docket No. 266936). Following a
> bench trial after Judge Schma retired, the trial court, Gary C.
> Giguere, Jr., J., concluded that the defendant breached its contract
> with the plaintiff and that the breach caused the natatorium
> moisture problem that had occurred. The court awarded the
> plaintiff damages against the defendant for the cost of corrective
> work made necessary by the defendant's breach of contract and
> the same amount against Merchants with respect to its perfor-
> mance bond. The court also ruled that the plaintiff had no cause of
> action for contractual indemnity because no claims, suits, actions,
> recoveries, or demands were ever made, brought, or recovered
> against the plaintiff within the meaning of the indemnity clause in
> the parties' contract. The defendant appealed, and the plaintiff
> cross-appealed.

> The Court of Appeals held:

> 1. The claims by the plaintiff against the defendant are barred
> by the statute of repose, MCL 600.5839(1), because the defendant
> is a contractor that made an improvement to real property and
> because the plaintiff filed its lawsuit against the defendant for

injury to property arising out of the defective and unsafe condition of an improvement to real property more than six years after the use or acceptance of the improvement. The resolution of this issue renders all other issues raised by the parties moot. The judgment of the trial court awarding the plaintiff damages for breach of contract must be reversed and the case must be remanded to the trial court for the entry of a judgment in the defendant's favor on all the claims against the defendant.

2. Where a component of an improvement is an integral part of the improvement to which it belongs, the component constitutes an improvement to real property. The wooden roof deck system installed by the defendant was itself an integral component of the natatorium's roof and the roof was an integral component of the building. The wooden roof deck system was a permanent addition to real property that enhanced its value, involved the expenditure of labor and money, and was designed to make the property more useful or valuable. The wooden roof deck system was an improvement to real property for purposes of MCL 600.5839.

3. The meaning of the word "injury," as used in the phrase "any injury to property" in MCL 600.5839(1), is sufficiently broad to encompass the plaintiff's claim that the defendant's defective workmanship resulted in harm or damage to the natatorium roof and was a violation of contractual rights, giving the plaintiff the right to seek damages. The statute of repose applies to all actions against a contractor based on an improvement to real property, including claims of breach of contract, breach of warranty, breach of an express promise, fraud, and misrepresentation.

4. The statute of repose is triggered by the time of occupancy, use, or acceptance of the improvement. Only one of these criteria must be met to trigger the running of the six-year period of limitations. Although the plaintiff filed its complaint within six years of the occupancy of the completed improvement, the action was not filed within six years of the use or acceptance of the improvement. The claims against the defendant are time-barred by MCL 600.5839(1).

Reversed and remanded.

1. LIMITATION OF ACTIONS — ARCHITECTS — PROFESSIONAL ENGINEERS — CONTRACTORS — WORDS AND PHRASES — IMPROVEMENT TO REAL PROPERTY.

An "improvement to real property"—for purposes of the statute pertaining to actions against architects, professional engineers, or contractors arising from an improvement to real property—is a permanent addition to or betterment of real property that enhances its value and that involves the expenditure of labor or

money and is designed to make the property more useful or valuable as distinguished from ordinary repairs; factors to consider in distinguishing between ordinary repairs and an improvement are whether a modification adds to the value of the property for the purposes of its intended use, the nature of the improvement, and its permanence (MCL 600.5839[1]).

2. LIMITATION OF ACTIONS — ARCHITECTS — PROFESSIONAL ENGINEERS — CONTRACTORS — IMPROVEMENT TO REAL PROPERTY.

A component of an improvement to real property that is an integral part of the improvement to which it belongs constitutes an improvement to real property for purposes of the statute pertaining to actions against architects, professional engineers, or contractors arising from an improvement to real property (MCL 600.5839[1]).

3. LIMITATION OF ACTIONS — ARCHITECTS — PROFESSIONAL ENGINEERS — CONTRACTORS — WORDS AND PHRASES — ANY INJURY TO PROPERTY.

The term "injury"—as used in the phrase "any injury to property" in the statute pertaining to actions against architects, professional engineers, and contractors arising from improvements to real property—is sufficiently broad to encompass a claim of defective workmanship in making an improvement to real property (MCL 600.5839[1]).

*Howard & Howard Attorneys, P.C.* (by *Scott Graham*), and *Scott Graham PLLC* (by *Scott Graham*) for the Miller-Davis Company.

*Field & Field, P.C.* (by *Samuel T. Field*), for Ahrens Construction, Inc.

Before: JANSEN, P.J., and HOEKSTRA and MARKEY, JJ.

PER CURIAM. Defendant Ahrens Construction, Inc., appeals by right the judgment entered after a bench trial for plaintiff, Miller-Davis Company, on its breach of contract claim. Plaintiff cross-appeals the trial court's entry of a judgment of no cause of action on plaintiff's claim for contractual indemnity of the amount awarded for breach of contract and its attorney

fees for this action. Ahrens (hereafter defendant) argues that the trial court clearly erred regarding several factual findings underlying the trial court's key ruling that defendant's workmanship installing a roof caused a severe condensation problem in the natatorium housing the indoor pool at a YMCA complex at Sherman Lake near Augusta, Michigan. Defendant also contends that the trial court clearly erred in calculating plaintiff's damages and prejudgment interest. Also, defendant argues that the trial court abused its discretion by not granting it a default judgment after learning during trial that plaintiff had violated a discovery order by failing to disclose the identity of an expert plaintiff had consulted during its investigation of the condensation problem. Finally, defendant argues that the trial court erred by not granting it judgment based on the statute of repose, MCL 600.5839(1). We agree. Our resolution of this issue renders all other issues moot. We reverse and remand for entry of judgment for defendant.

A. BACKGROUND AND TRIAL

Plaintiff, a general contractor and construction manager, brought this breach of contract action against subcontractor Ahrens and its bondsman, Merchants Bonding Company, alleging faulty workmanship by Ahrens when installing a wooden (Timber-Deck) roofing system covering the natatorium of a YMCA recreational complex at Sherman Lake, Augusta, Michigan. During cold weather, condensation would form and drip from the ceiling of the natatorium; the parties referred to this as the natatorium moisture problem (NMP). Plaintiff's theory of the case was that the NMP was caused by rips, tears, and missing sections of a Visqueen vapor barrier installed above the inner wood tongue and groove decking system, which was supported by a "T"

and "sub-T" superstructure, and by defendant's failing to install Styrofoam block insulation "tight" enough in rectangular cells that were formed by the T's and sub-T's. This roofing system was a last-minute cost-saving substitution for a roofing system consisting of a four-by-six inch plank ceiling, with nail-based Styrofoam insulation covered by oriented strand board (OSB or plywood), roofing felt, and a standing seam steel shell.

Defendant's theory of the case was that the NMP was the result of several design errors, the most serious of which allowed the vapor barrier covering the uninsulated tops of the T's to come in contact with cold outside air. Defendant supported its theory of the case with the testimony of an expert with a Ph.D. in engineering who specialized in building moisture problems. Defendant's expert opined that moisture from the humid pool air migrated through both the wood T's to their tops and the gaps in the tongue and groove ceiling planks, then along the underside of the vapor barrier to the top of the T's, where it condensed and fell back down through the ceiling. Defendant's expert also opined that any of the alleged defects in defendant's workmanship that plaintiff found after tearing off the outer portions of the roof actually helped prevent the NMP because it allowed moisture to escape through the airspace between the insulation and the outer roof structure. Defendant also argued that the alleged defects plaintiff found were caused by plaintiff's deconstruction of the roof.

Plaintiff theorized that the NMP was eventually "fixed" when, after a series of attempts at correcting it,[1]

---

[1] These attempts at solving the NMP included experimentation with building temperature and pressurization, sealing the juncture between

it deconstructed the roof system in 2003 to inspect it. Plaintiff contracted with the architect and the YMCA to perform "corrective work," which included three items that were not a part of the original plans and specifications for the roof system: (1) a spray-on rubberized waterproofing substance (Procor), (2) the sealing of any gaps between the Styrofoam block insulation and the wood "T" decking structure with spray-on, self-expanding, urethane foam, and (3) caulking the top of the T's and sub-T's with silicone, thereby sealing a polyethylene vapor barrier placed on top of the Procor. Plaintiff demanded that defendant perform the corrective work without compensation, but defendant refused because it believed that the NMP was the result of design defects, not its workmanship. At trial, defendant's expert testified that the added elements in the corrective work trapped moisture in the wooden structure of the roof facing the interior of the pool so that it would temporarily fix the condensation problem until sometime in the future when the Procor might break down, particularly at the tongue and groove gaps.

After a bench trial, the trial court concluded that Ahrens breached its contract with plaintiff, and that this breach caused the NMP. Plaintiff's damages were calculated on the basis of expenses plaintiff incurred tearing off and reinstalling the roofing system with the "corrective measures" noted above, plus 10 percent for "overhead," 15 percent for a "fee," and interest of "prime plus 2%" from December 2003 (after completion of the corrective work) to September 2007 (during trial). The trial court determined that plaintiff used Procor as a cost saving measure to mitigate its damages

the roof and walls, installing roof ridge vents, adding vents below skylights, experimenting with ceiling fans, and additional work on the soffits. These efforts helped but did not resolve the NMP.

by avoiding completely removing the roofing system elements. Both the trial court in its opinion and findings and plaintiff in its brief on appeal fail to cite any testimony or other evidence specifically establishing a causal link between Ahrens's alleged defective workmanship and the NMP. Plaintiff's theory, which the trial court obviously accepted, appears to be based on the following logic: (1) deconstructing the roof revealed defective workmanship in the installation of the vapor barrier and insulation; (2) the corrective work was performed using Procor as a cost saving measure, and (3) after the roof was reconstructed, the NMP was solved. However, plaintiff's CEO admitted at trial that plaintiff never determined what caused the NMP. On the basis of photographs taken during plaintiff's disassembly of the roof system and good old-fashioned common sense, the trial court decided that Ahrens's poor workmanship caused the NMP.

The trial court concluded that "Ahrens materially and substantially breached [its] contract by performing the nonconforming and defective work described above, and upon notice and the opportunity, Ahrens failed to correct its work, or to otherwise cause it to come into conformance." Further, the trial court determined that plaintiff "suffered damages of $348,851.50" performing corrective work. The trial court also awarded the same amount against Merchants with respect to the performance bond it had issued.[2] The court also ruled that plaintiff had no cause of action for contractual indemnity because "no claims, suits, actions, recoveries, or demands were ever made, brought or recovered against" plaintiff within the meaning of the indemnity clause in the parties' contract. This ruling is the subject of plaintiff's cross-appeal.

---

[2] Merchants did not appeal and settled with plaintiff.

B. PROCEDURAL HISTORY REGARDING THE STATUTE OF REPOSE

The statute of repose at issue, MCL 600.5839, provides, in pertinent part:

(1) No person may maintain *any action* to recover damages *for any injury to property*, real or personal, or for bodily injury or wrongful death, *arising out of the defective and unsafe condition of an improvement to real property, nor any action for* contribution or *indemnity for damages sustained as a result of such injury*, against any state licensed architect or professional engineer performing or furnishing the design or supervision of construction of the improvement, or *against any contractor making the improvement*, more than 6 years after the time of *occupancy of the completed improvement, use, or acceptance* of the improvement . . . .

\* \* \*

(4) As used in this section, "contractor" means an individual, corporation, partnership, or other business entity which makes an improvement to real property. [Emphasis added.]

By the end of February 1999, defendant completed all its tasks regarding constructing the roof system, including installing all the wood parts, the vapor barrier, the T's and sub-T's, the insulation, all of which were covered by OSB nailed on top of two-by-four inch "sleepers" running perpendicular over the T's to the top ridge of the roof. Defendant asserts that the part of the roof system it constructed was a completed "improvement" within the meaning of the statute of repose, and that the statute began to run when plaintiff immediately began "using" the "improvement" by directing another subcontractor to apply roofing felt and the standing seam steel weather barrier on top of it. Defendant certified to plaintiff that it had completed its

work on the roof on April 26, 1999, and plaintiff paid defendant for this work the next day. Defendant asserts that this constituted "acceptance" by plaintiff within the meaning of the statute. A temporary certificate of occupancy was issued for the entire project on June 11, 1999.[3] Plaintiff filed its complaint in this matter on May 12, 2005, more than six years, defendant asserts, after the "improvement" it built was used and accepted by plaintiff.

Defendant moved for summary disposition under MCR 2.116(C)(7) on August 1, 2005. Defendant's argument then is identical to its argument now on appeal. Defendant Merchants also moved for summary disposition but on different grounds. Merchants argued that plaintiff failed to comply with a condition precedent to suit under the performance bond: filing suit within two years of defendant's ceasing work on the project. Both motions were argued before Judge William G. Schma.[4] By opinion and order filed November 18, 2005, Judge Schma denied both motions, but he only addressed Merchants' argument. Defendant applied for leave to appeal in this Court. This Court denied leave "for failure to persuade the Court of the need for immediate appellate review." Unpublished order of the Court of Appeals, entered March 6, 2006 (Docket No. 266936).

This case was tried in May and September 2007 before Judge Gary C. Giguere, Jr., who succeeded Judge Schma. Defendant raised the statute of repose both in closing argument and in its written submission of proposed findings of fact and conclusions of law. The trial court issued its opinion, findings of fact, and

---

[3] Plaintiff's exhibit 12 indicates that the YMCA advertised to conduct open house tours of the facility for the public on March 14 and April 18, 1999.

[4] Judge Schma retired before the trial of this case.

conclusions of law on December 21, 2007. Although the trial court found facts consistent with defendant's claims regarding the application of the statute of repose, the court did not address the statute of repose. Judge Giguere found that Ahrens "completed the natatorium roof by February 18, 1999. Ahrens submitted its final request for pay on April 26, 1999, and Miller-Davis paid Ahrens the very next day." The trial court also described the manner in which the roof was constructed and that another subcontractor completed the final tasks after Ahrens finished its work.

### C. PRESERVATION

Generally, an issue is not properly preserved for appeal if it has not been raised in, and addressed and decided by the lower court or administrative tribunal. *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005). Here, defendant raised the statute of repose as a bar to plaintiff's claims by filing a motion for summary disposition before trial and again at trial in its closing argument and in its written submission of proposed findings of fact and conclusions of law. See *New Properties, Inc v George D Newpower, Jr, Inc*, 282 Mich App 120, 137-138, 139; 762 NW2d 178 (2009). Judge Schma denied defendant's motion for summary disposition without addressing MCL 600.5839. Judge Giguere also failed to specifically address the statute of repose in his findings of fact and conclusions of law after trial. "[T]his Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424,

427; 711 NW2d 421 (2006). These exceptions apply here. A party "should not be punished for the omission of the trial court." *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994).

### D. STANDARD OF REVIEW

This Court reviews de novo a trial court's ruling regarding a motion for summary disposition. *Abbott v John E Green Co*, 233 Mich App 194, 197; 592 NW2d 96 (1998). A motion for summary disposition under MCR 2.116(C)(7) asserts that a claim is barred by immunity granted by law. The allegations of the complaint are accepted as true unless contradicted by documentary evidence. *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 443; 761 NW2d 846 (2008). The motion is properly granted when the undisputed facts establish that the moving party is entitled to immunity granted by law. *Citizens Ins Co v Scholz*, 268 Mich App 659, 662; 709 NW2d 164 (2005); *Pendzsu v Beazer East, Inc*, 219 Mich App 405, 408; 557 NW2d 127 (1996).

A trial court's findings of fact following a bench trial are reviewed for clear error, MCR 2.613(C), and the court's conclusions of law are reviewed de novo. *In re Kostin Estate*, 278 Mich App 47, 53; 748 NW2d 583 (2008); *Chapdelaine v Sochocki*, 247 Mich App 167, 169; 635 NW2d 339 (2001). This Court will find clear error when it is "left with the definite and firm conviction that a mistake has been committed." *Walters v Snyder*, 239 Mich App 453, 456; 608 NW2d 97 (2000). The application of the law to the facts of a case is itself a question of law subject to review de novo. *People v Barrera*, 451 Mich 261, 269 n 7; 547 NW2d 280 (1996). This Court also reviews de novo issues of statutory interpretation. *Abbott, supra* at 198.

The primary goal of judicial interpretation of a statute is to ascertain and give effect to the intent of the Legislature. *New Properties, supra* at 136. The Court must first review the language of the statute, and if it is unambiguous, must assume that the Legislature intended its plain meaning and must enforce the statute as written. *Id.*; *Alvan Motor Freight, Inc v Dep't of Treasury*, 281 Mich App 35, 39; 761 NW2d 269 (2008). Stated otherwise, the Court may read nothing into a clear statute that is not within the manifest intention of the Legislature as derived from the language of the statute itself. *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002). "A provision in a statute is ambiguous only if it irreconcilably conflicts with another provision or it is equally susceptible to more than a single meaning." *In re Lee*, 282 Mich App 90, 93; 761 NW2d 432 (2009). When an ambiguity exists in a statute, the statutory language should be construed reasonably, keeping in mind the purpose of the act. *Gilliam v Hi-Temp Products, Inc*, 260 Mich App 98, 109; 677 NW2d 856 (2003).

When reading a statute, the Court must assign to every word or phrase its plain and ordinary meaning unless otherwise defined in the statute, or unless the Legislature has used technical words or phrases that "may have acquired a peculiar and appropriate meaning in the law . . . ." MCL 8.3a; *Alvan Motor Freight, supra* at 40. Additionally, the Court may not read a word or phrase of a statute in isolation but must read each word or phrase and its placement in the context of the whole act. *Id.*; *Village of Holly v Holly Twp*, 267 Mich App 461, 470; 705 NW2d 532 (2005). Consequently, this Court must consider "both the plain meaning of the critical word or phrase as well as 'its placement and purpose in the statutory scheme.' " *Sun*

*Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999) (citation omitted).

E. ANALYSIS

We conclude that defendant's argument on this issue is meritorious. Because defendant is a contractor that made an improvement to real property, and because plaintiff filed its lawsuit against defendant "for any injury to property . . . arising out of the defective and unsafe condition of an improvement to real property" more than six years after the "use, or acceptance of the improvement," MCL 600.5839(1), all of plaintiff's claims against defendant are barred by the statute of repose.

MCL 600.5839 has on several occasions been subjected to judicial scrutiny. Our Supreme Court has upheld the statute as originally adopted, 1967 PA 203, against constitutional challenge that it violates due process and equal protection. *O'Brien v Hazelet & Erdal*, 410 Mich 1; 299 NW2d 336 (1980). The *O'Brien* Court recognized the power of the Legislature to extinguish common-law rights of action, noting, "the instant statute is both one of limitation and one of repose." *Id.* at 15. For claims accruing within the period specified, the statute acts as a statute of limitations. But beyond the statute's time parameters, it acts as a statute of repose by preventing a cause of action from ever accruing. *Id.* The *O'Brien* Court also rejected a challenge to MCL 600.5839 on the basis that it did not extend its protection to contractors. *O'Brien, supra* at 16-19. The Legislature subsequently added contractors and a "discovery" provision to the statute. 1985 PA 188; *Beauregard-Bezou v Pierce*, 194 Mich App 388, 391-392; 487 NW2d 792 (1992); *Ostroth v Warren Regency, GP, LLC*, 474 Mich 36, 42 n 6; 709 NW2d 589 (2006).

This Court on several occasions has opined regarding the purpose of MCL 600.5839. Specifically, "[t]he purpose of the statute of repose is to shield architects, engineers, and contractors from stale claims and relieve them of open-ended liability for defects in workmanship." *Ali v Detroit*, 218 Mich App 581, 587-588; 554 NW2d 384 (1996). See also *Abbott, supra* at 200, quoting *Pendzsu, supra* at 410 ("The purpose of the statute of repose is to protect engineers, architects, and contractors from stale claims and to eliminate open-ended liability for 'defects in workmanship.' "), and *Pendzsu, supra* at 410 ("The purpose of Michigan's statute of repose is to shield architects, engineers, and contractors from stale claims and to relieve them of open-ended liability for defects in workmanship."). Here, plaintiff's claims against defendant, for both breach of contract and indemnity, rest on the allegation that defendant's defective workmanship on the natatorium's roof caused the NMP.

This Court has also addressed the meaning of the undefined word "improvement," as used in MCL 600.5839. In *Pendzsu*, this Court reviewed the reasoning of the Sixth Circuit Court of Appeals in *Adair v Koppers Co, Inc*, 741 F2d 111 (CA 6, 1984), which construed a similar Ohio statute of repose applicable to actions for damages " 'arising out of the defective and unsafe condition of an improvement to real property.' " *Pendzsu, supra* at 410, quoting *Adair, supra* at 112. Noting that this Court in *Fennell v Nesbitt, Inc*, 154 Mich App 644, 650-651; 398 NW2d 481 (1986), had adopted the *Adair* reasoning, the *Pendzsu* Court did also. *Pendzsu, supra* at 410-411. The Court concluded that an "improvement to real property" is a " 'permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the

property more useful or valuable as distinguished from ordinary repairs.' " *Pendzsu, supra* at 410, quoting *Adair, supra* at 114. In distinguishing between ordinary repairs and an "improvement," the Court further noted factors to consider are whether a modification adds to the value of the property for the purposes of its intended use, the nature of the improvement, and its permanence. *Pendzsu, supra* at 411. The issue before the Court in *Pendzsu* was whether the defendant's work installing industrial ovens at an automobile plant and enlarging and relining similar ovens and blast furnaces at a steel plant were improvements. The Court held that "the relining of the coke ovens and blast furnaces was 'integral' to the usefulness of the respective plants" and that therefore the statute of repose applied. *Id.* at 412.

This Court in *Travelers Ins Co v Guardian Alarm Co,* 231 Mich App 473; 586 NW2d 760 (1998), considered whether enlarging the capacity of electrical circuit panels was an "improvement" within the meaning of MCL 600.5839. The Court opined:

> An improvement is a "permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." The test for an improvement is not whether the modification can be removed without damage to the land, but whether it adds to the value of the realty for the purposes for which it was intended to be used. In addition, the nature of the improvement and the permanence of the improvement should also be considered. Furthermore, *if a component of an improvement is an integral part of the improvement to which it belongs, then the component constitutes an improvement to real property.* [*Travelers, supra* at 478 (citations omitted; emphasis added).]

The Court then held that "the new circuit panel box and transformer were integral components of an electrical system that was essential to the operation of the facility"; consequently, they were "an improvement to real property for the purposes of the statute of repose." *Id.* at 478-479.

Also, following the *Pendzsu* decision, this Court in *Abbott* rejected the plaintiff's claim that the statute applied only to the completed improvement, not the contractor's workmanship in making the improvement. *Abbott, supra* at 199-201. This Court observed that like statutes of limitations, the statute of repose must be construed in a manner that advances its purpose, i.e., to "protect engineers, architects, and contractors from stale claims and to eliminate open-ended liability for 'defects in workmanship.' " *Id.* at 200, quoting *Pendzsu, supra* at 410. The Court held that the statute protected the defendant from the plaintiff's stale workmanship claims. "Contractors would not enjoy the 'repose' that the statute intends to guarantee if plaintiffs, barred from bringing claims arising out of the finished result of an improvement, could nonetheless bring claims arising out of the construction practices employed in making the improvement." *Abbott, supra* at 201.

Applying the reasoning of these cases to the undisputed facts of the instant case, we conclude that defendant was a "contractor" that made an improvement to real property. Specifically, the wooden roof deck system that defendant constructed or installed, with its component parts of T's, sub-T's, vapor barrier, insulation, sleepers, and OSB, was itself an integral component of the natatorium's roof to which another subcontractor added roofing felt and an outer steel skin. The completed roof was an integral component of the building. The wooden roof deck system was a permanent addition

to real property that enhanced its value, involved the expenditure of labor and money, and was designed to make the property more useful or valuable. *Travelers, supra* at 478. In sum, defendant is a "contractor" who made "an improvement to real property." MCL 600.5839(4). Further, the cases reviewed suggest that plaintiff's claim against defendant for defective workmanship is within the ambit of the statute. *Abbott, supra* at 200; *Pendzsu, supra* at 410; *Ali, supra* at 587-588.

Plaintiff, however, argues that MCL 600.5839(1) does not apply to this case because its claim is for breach of an express promise, not for "damages for any injury to property . . . ." Plaintiff relies on *City of Litchfield v Union Constr Co*, unpublished opinion per curiam of the Court of Appeals, issued October 17, 1997 (Docket No. 189823), which is without binding precedential authority. MCR 7.215(C)(1). Likewise, lower federal court decisions on which *Litchfield* relied lack binding authority. *Abela v Gen Motors Corp*, 469 Mich 603, 606; 677 NW2d 325 (2004). In addition, this Court has held that the term "any action" means MCL 600.5839(1) must apply to contract actions. See *Michigan Millers Mut Ins Co v West Detroit Bldg Co, Inc*, 196 Mich App 367, 378; 494 NW2d 1 (1992): "Because § 5839(1) refers to '*any* action to recover damages for any injury to property . . . or for bodily injury or wrongful death,' it is clear that even before the addition of § 5805(10)[5] it was not limited to tort actions, but, rather, included contract actions." (Emphasis in original.) The *Litchfield* Court, although agreeing that "any action" includes contract

---

[5] This subsection was added by 1988 PA 115, effective May 2, 1988. *Michigan Millers, supra* at 372. It is now found at MCL 600.5805(14): "The period of limitations for an action against a state licensed architect, professional engineer, land surveyor, or contractor based on an improvement to real property shall be as provided in section 5839."

actions, still concluded that a "breach of an express promise is not a damage to property." *Litchfield, supra* at 8, citing *Huhtala v Travelers Ins Co*, 401 Mich 118, 128-129; 257 NW2d 640 (1977). The latter case addressed whether the three-year limitations period for negligence actions or the six-year limitations period for contract actions applied to the plaintiff's claim. One of the cases the *Huhtala* Court discussed was *Weeks v Slavik Builders, Inc*, 384 Mich 257; 181 NW2d 271 (1970), in which the Court opined that the plaintiff's breach of warranty claim was "not one for damages for injuries to property" because the property at issue, cement roofing tiles, had not been damaged but rather did not perform as had been warranted. *Weeks, supra* at 258. Plaintiff's claim here is not one for breach of warranty; it was for shoddy workmanship.

While the underlying claim in this case is arguably closer to the roofing tiles that did not perform as warranted in *Weeks* than to the roof that collapsed in *Michigan Millers*, we still conclude that the *Litchfield-Huhtala-Weeks* reasoning is inapposite to the present case. First, the more specific provisions of MCL 600.5839(1) apply over an arguably applicable general statute of limitations. See *Citizens Ins Co, supra* at 664, citing *Michigan Millers, supra* at 378; See also *Ostroth v Warren Regency, GP, LLC*, 263 Mich App 1, 6, 13; 687 NW2d 309 (2004). Indeed, despite the *Litchfield* Court's attempt to distinguish *Michigan Millers* on the basis that the plaintiff in that case conceded that its contract claim would be time-barred by the general limitations statute applicable to contract actions, the specific holding of *Michigan Millers* was that whatever legal theory the plaintiff advanced, MCL 600.5839(1) barred the claim. The *Michigan Millers* Court "conclude[d] that the Legislature's intent . . .

was to apply the statute of limitation contained in § 5839(1) to *all actions* brought against contractors on the basis of an improvement to real property, including those brought by owners for damage to the improvement itself." *Michigan Millers, supra* at 378 (emphasis added).

Second, the analysis of *Litchfield-Huhtala-Weeks* examines the nature of the plaintiff's claim to determine which potentially applicable statute of limitations might apply whereas MCL 600.5839(1) by its plain terms applies to "*any action* to recover damages for *any injury* to property, real or personal, . . . arising out of the defective and unsafe condition of an improvement to real property . . . ." (Emphasis added.) The terms that the Legislature used in MCL 600.5839(1) are broad and all-inclusive. Courts may consult a dictionary to learn the common and approved meaning of undefined statutory terms. *Halloran v Bhan*, 470 Mich 572, 578; 683 NW2d 129 (2004). The *Random House Webster's College Dictionary* (1992) definitions of "injury" include "harm or damage done or sustained" and "any violation of the rights, property, etc., of another for which damages may be sought." The latter definition is noted as one in "law" and seems particularly apt given that the purpose of the statute is to limit the time within which to bring legal claims for damages against the listed occupations making improvements to real property. Under these common meanings of the word "injury" as used in the phrase "any injury to property" in MCL 600.5839(1), the statute is sufficiently broad to encompass plaintiff's claim that defendant's defective workmanship resulted in harm or damage to the natatorium roof and was a violation of contract rights giving plaintiff the right to seek damages. This reading of the statute is consistent with its purpose "to protect engineers, architects, and contractors from stale claims and

to eliminate open-ended liability for 'defects in work-manship.' " *Abbott, supra* at 200-201 & n 2 (citation omitted); *Beauregard-Bezou, supra* at 393 ("the words of the statute must be construed in light of the general purpose sought to be accomplished by the Legislature"). Thus, plaintiff's claim is one for "any injury to property" within the meaning of MCL 600.5839(1); it does not matter that plaintiff's legal theory is based on an express promise when it is a claim for injury (harm or damage) to or caused by an improvement to real property a contractor has made. *Michigan Millers, supra* at 378. "The statute of repose applies to all actions against a contractor based on an improvement to real property, including . . . breach of contract, breach of warranty, fraud, and misrepresentation claims." *Travelers, supra* at 481-482.

Next, we address the question whether the six-year limitations period of MCL 600.5839(1) expired before plaintiff filed its complaint on May 12, 2005. The statute provides for three potential events that might trigger the running of its limitations period: "the time of occupancy of the completed improvement, use, *or* acceptance of the improvement . . . ." MCL 600.5839(1) (emphasis added). The Court in *Beauregard-Bezou* discussed this language, observing that "[w]here the use of the disjunctive 'or' creates ambiguity in a statute, the language of the statute must be construed to give effect to the Legislature's intent, and the words of the statute must be construed in light of the general purpose sought to be accomplished by the Legislature." *Beauregard-Bezou, supra* at 393. The Court noted that the words "and" and "or" are often misused in drafting statutes, but "the literal meaning of 'or' should be followed unless it renders the statute dubious." *Id.* The Court, *id.*, concluded that the literal interpretation of the word "or" as used in MCL 600.5839(1) would not

render that portion of the statute dubious. Other panels of the Court have agreed with *Beauregard-Bezou*. See *Abbott*, *supra* at 204 n 6, and *Travelers*, *supra* at 481. The *Travelers* Court opined: "The statute of repose is triggered by the time of occupancy *or* use *or* acceptance of the improvement. Only one of the criteria set forth in the statute of repose must be met to trigger the running of the period of limitation." *Id.* (emphasis in original; citations omitted).

Here, the parties agree that plaintiff filed its complaint within six years following "occupancy of the completed improvement." Specifically, the parties agree that this event occurred on or after June 11, 1999, the date on which the proper authority issued a temporary certificate of occupancy and the date on which the parties agree the entire project was substantially completed. But it is undisputed, and the trial court so found, that defendant completed its work on its part of the natatorium's roof by the end of February 1999. Thereafter, the evidence clearly establishes that another contractor completed the final phase of the roof's construction by attaching the roofing felt and the standing seam steel skin. Plaintiff's exhibit 9, the minutes of a work-progress meeting on February 18, 1999, indicates that over the prior two weeks Ahrens completed its roof work at the recreational building, and that work for the next two weeks contemplated subcontractor Architectural Glass & Metals' completing the metal roof at the recreation building. We agree with defendant that this evidence establishes that the "improvement" it made, the wooden roof deck system, was completed and in "use" by plaintiff and other subcontractors who were finishing the project. Clearly, Architectural Glass & Metals was using the wooden roof deck system to install the outer steel roof covering in February 1999. Thus, the wooden deck system was in use by plaintiff as the

construction manager directing the work of the various subcontractors for the purpose of completing the entire project.

Plaintiff's contention that "use" of the "improvement" could not have occurred until after June 11, 1999, the date the temporary occupancy certificate was issued, would require one to read the statute to mean that only the owner of the real property can trigger the running of its limitations period. Although policy arguments could be advanced for or against such an interpretation of the statute, the rules of judicial construction of statutes require that statutes be enforced as written. *Alvan Motor Freight, supra* at 39. The triggering event of "occupancy of the completed improvement" certainly implies "occupancy" by the owner, or at least one having the right to occupy the completed improvement. But the statute does not so limit "use, or acceptance of the improvement . . . ." It is contrary to the rules of statutory construction to read into a statute a provision that is not within the manifest intention of the Legislature as derived from the language of the statute itself. *Roberts, supra* at 63.

Additionally, assuming that the Legislature's failure to specify whose "use" of the "improvement" triggers the running of the limitations period renders the statute ambiguous, the statute must be given a reasonable construction consistent with its purpose. See *Michigan Millers, supra* at 373; *Beauregard-Bezou, supra* at 393 ("the words of the statute must be construed in light of the general purpose sought to be accomplished by the Legislature"). "The purpose of the statute of repose is to shield architects, engineers, and contractors from stale claims and relieve them of open-ended liability for defects in workmanship." *Ali, supra* at 587-588. The purpose of the statute is not to protect owners; they

remain potentially liable to third parties for defects in the premises even if caused by a contractor's defective workmanship. *Id.* In light of the statute's purpose, it is reasonable to construe the word "use" in the statute as "use" of the "improvement" for its intended purpose by any lawfully authorized person or entity. So construed, the improvement that defendant made, the wooden roof system, was used by authorized persons and entities in February 1999 for the purpose intended when plaintiff and plaintiff's designated subcontractor completed the roof's construction by installing roofing felt and the outer steel skin. At the same time, plaintiff and other authorized subcontractors used the roof deck completed by defendant for the purpose intended: shielding the interior of the building and its occupants from the elements.

With respect to "acceptance of the improvement," plaintiff does not argue that it could not trigger "acceptance" under the statute, only that the facts show that it never, in fact, accepted the roof deck system that defendant constructed. Moreover, even if the owner of the improvement must trigger "acceptance," plaintiff as the general contractor-construction manager for the project was the authorized representative of the owner for purposes of supervising construction, deeming whether subcontractor work was acceptable under the subcontract's "charge-back" provision, and having the ability to withhold payment for unacceptable work. Here, the undisputed facts, and as found by the trial court, establish that defendant "completed the natatorium roof by February 18, 1999[,] . . . submitted its final request for pay on April 26, 1999, and Miller-Davis paid Ahrens the very next day." Although plaintiff asserts it never "accepted" defendant's work on the roof, plaintiff's own actions in accepting defendant's certification that the roof work had been completed, and then paying

for that work, speaks louder than its litigation denials. In sum, we conclude that the facts establish that by the end of April 1999 plaintiff's actions constituted "acceptance of the improvement" defendant made to real property triggering the running of the six-year limitations period of MCL 600.5839(1). *Travelers, supra* at 481.

Plaintiff misplaces reliance on foreign caselaw to argue that acceptance cannot waive its right of action on defective workmanship because such cases are not binding precedent, *Mable Cleary Trust v Edward-Marlah Muzyl Trust*, 262 Mich App 485, 494 n 5; 686 NW2d 770 (2004), and because they are inapposite. The cited cases essentially say that an owner's acceptance of construction work will not waive its right of action against the contractor for subsequently discovered latent defects. Plaintiff argues that public policy should preclude "acceptance" from occurring before noncompliant work is discovered. But the public policy of the state is expressed in MCL 600.5839: claims for latent defects are barred after the running of the six-year limitations period. Further, "acceptance" does not act as a waiver of the right to bring an action for defective work; it only triggers the running of the period within which such claims must be brought, after which they are barred by the statute of repose. In addition, the Legislature has weighed policy considerations regarding discovery of latent defects and provided an extended "discovery" limitations period where "the defect constitutes the proximate cause of the injury or damage for which the action is brought and is the result of gross negligence on the part of the contractor or licensed architect or professional engineer." MCL 600.5839(1).

On the basis of the foregoing analysis, we hold that the statute of repose with respect to the improvement

to real property that defendant made, the wooden roof deck system over the YMCA's natatorium, commenced running as a result of "use" by plaintiff, other subcontractors, or the owner, by the end of February 1999. Further, we hold that the facts establish that plaintiff "accepted" the improvement by the end of April 1999 when plaintiff accepted defendant's certification that its work on the roof had been completed and paid defendant for that work. Both these dates occurred more than six years before plaintiff filed its complaint, which states a claim "for any injury to property . . . arising out of the defective and unsafe condition of an improvement to real property" and a claim for "indemnity for damages sustained as a result of such injury . . . ." MCL 600.5839(1). Consequently, plaintiff's claims against defendant are time-barred. *Michigan Millers, supra* at 378; *Beauregard-Bezou, supra* at 394.

Because we have resolved the argument regarding the statute of repose in defendant's favor, all other issues raised in defendant's appeal and in plaintiff's cross-appeal are moot.

We reverse the judgment of the trial court awarding plaintiff damages for breach of contract. We remand this case to the trial court for entry of a judgment in defendant's favor on all of plaintiff's claims against defendant. Defendant, being the prevailing party, may tax costs pursuant to MCR 7.219. We do not retain jurisdiction.