MILLER-DAVIS COMPANY v AHRENS CONSTRUCTION, INC
(ON REMAND)

Docket No. 284037. Submitted September 1, 2011, at Lansing. Decided March 22, 2012, at 9:10 a.m. Leave to appeal sought.

Miller-Davis Company, the general contractor and construction manager for a project that included building a natatorium for a YMCA recreational complex, brought an action in the Kalamazoo Circuit Court against roofing subcontractor Ahrens Construction, Inc., and Merchants Bonding Company, seeking damages on the basis that Ahrens Construction breached its contract with Miller-Davis to install a wooden roofing system in accordance with the terms and requirements of the provided plans and specifications. Miller-Davis also sought damages for contractual indemnity. Following a bench trial, the court, Gary C. Giguere, Jr., J., concluded that Ahrens Construction had breached its contract with Miller-Davis and that the breach caused the natatorium moisture problem that had occurred. The court found in favor of Miller-Davis on the breach of contract claim, but entered a judgment of no cause of action for the contractual indemnity claim. Merchants Bonding ultimately settled with Miller-Davis. Ahrens Construction appealed the court's breach of contract finding, and Miller-Davis cross-appealed the contractual indemnity determination. The Court of Appeals, JANSEN, P.J., and HOEKSTRA and MARKEY, JJ., held that MCL 600.5839(1) time-barred Miller-Davis's claims. 285 Mich App 289 (2009). The Supreme Court reversed and remanded for application of the general six-year period of limitations, MCL 600.5807(8), a determination of when Miller-Davis's claims accrued, and consideration of the remaining issues raised in the appeal and cross-appeal. 489 Mich 355 (2011).

On remand, the Court of Appeals *held*:

1. Under MCL 600.5807(8), an action to recover damages for a breach of contract must be brought within six years after the claim first accrued. Except in certain circumstances not applicable in this case, MCL 600.5827 provides that a claim accrues at the time the wrong on which the claim is based was done, regardless of when the damage results. A construction contract must be examined to determine the wrong on which the breach is based, and the

cause of action accrues at the time work on the contract is completed. Miller Davis's breach of contract claim, which was filed on May 12, 2005, was barred by the six-year period of limitations because Ahrens Construction completed its work on the project by the end of February 1999 and the alleged breach—that Ahrens Construction had not complied with the terms and requirements of the plans and specifications—must have occurred by that date. The breach of contract claim did not accrue on the date the project was certified as being substantially complete by the owner, the architect, and Miller-Davis or on the date the certificate of occupancy was issued.

2. The contract's charge-back clause granted Miller-Davis authority to require Ahrens Construction to correct any failure to perform as required under the contract. However, Ahrens Construction's refusal to perform corrective work on the natatorium in 2003 was not a breach of the contract's charge-back clause. The charge-back clause was intended to ensure timely completion of the project by permitting Miller-Davis to intervene if Ahrens Construction had defaulted on its duties. The clause did not give Miller-Davis the right to demand corrective work after the project had been substantially completed and Ahrens construction had been paid for its work. In addition, Ahrens Construction's refusal to perform the corrective work did not reset the accrual date of the breach of contract claim under MCL 600.5807(8) and MCL 600.5827.

3. An indemnity contract is not intended to be used as a sword and shield in disputes between the contracting parties with respect to the performance of the contract itself. Indemnification clauses are meant to apportion liability among the contracting parties for liability to third parties. The period of limitations on a promise to indemnify runs from when the indemnitee sustained the loss or when the promisor failed to perform under the contract. Ahrens Construction did not breach the contract's indemnity clause because no claims or demands were made, brought, or recovered against Miller-Davis on which to base a claim for indemnification. Miller-Davis could not use the alleged breach of the indemnification clause as an alternative accrual date for its underlying breach of contract claim regarding Ahrens Construction's alleged failure to comply with the terms and requirements of the plans and specifications.

4. Even if the project owner's demand that Miller-Davis correct the natatorium's moisture problem was a demand within the meaning of the indemnification clause, it was still necessary to affirm the trial court's finding of no cause of action because the

demand arose out of a contract between the owner and Miller-Davis and there was insufficient evidence to prove that the moisture problem was caused by Ahrens Construction's failure to follow plans and specifications or by faulty workmanship. Although the moisture issue disappeared after Miller-Davis's corrective action, it could not be inferred that Ahrens Construction's work was defective because the corrective work included elements that were not present in the original plans and specifications.

5. Miller-Davis waived any claim that certain sections of documents from the American Institute of Architects were pertinent to its contract claims because it raised this issue for the first time on remand.

Reversed in part, affirmed in part, and remanded for entry of judgment in favor of Ahrens Construction.

1. CONTRACTS — CONSTRUCTION CONTRACTS — BREACH — STATUTES OF LIMITATIONS — ACCRUAL OF CLAIM.

An action to recover damages for a breach of contract must be brought within six years after the claim first accrued; except in certain circumstances, a claim accrues at the time the wrong upon which the claim is based was done, regardless of when the damage results; a cause of action for breach of a construction contract accrues at the time work on the contract is completed (MCL 600.5807[8], 600.5827).

2. INDEMNITY — CONTRACTS — STATUTES OF LIMITATIONS.

An indemnity contract is meant to apportion liability among the contracting parties for liability to third parties; the period of limitations on a promise to indemnify runs from when the indemnitee sustained the loss or when the promisor failed to perform under the contract.

*Howard & Howard Attorneys, P.C.* (by *Scott Graham*), and *Gemrich Law PLC* (by *Alfred J. Gemrich*) for Miller-Davis Company.

*Field & Field, P.C.* (by *Samuel T. Field*), for Ahrens Construction, Inc.

ON REMAND

Before: JANSEN, P.J., and HOEKSTRA and MARKEY, JJ.

PER CURIAM. In this case, defendant[1] appealed the judgment entered for plaintiff after a bench trial on plaintiff's breach of contract claims. Plaintiff filed a cross-appeal of a judgment of no cause of action on its claim for contractual indemnity. This Court held that MCL 600.5839(1) time-barred plaintiff's claims. *Miller-Davis Co v Ahrens Constr, Inc*, 285 Mich App 289, 292, 312-313; 777 NW2d 437 (2009). Our Supreme Court reversed, holding that "MCL 600.5839 is limited to tort actions." *Miller-Davis Co v Ahrens Const, Inc*, 489 Mich 355, 371; 802 NW2d 33 (2011). The Court concluded that the general six-year period of limitations applicable to actions for breach of contract, MCL 600.5807(8), which "runs from the date the 'claim first accrued,' " applied in this case. *Miller-Davis*, 489 Mich at 358. "Because there [was] a question about the date plaintiff's action accrued," the Court remanded the case to this Court "to resolve this issue, as well as other issues not yet considered." *Id*. Later, the Court indicated that on remand this Court should apply MCL 600.5807(8) and, "if necessary, [consider] the remaining issues raised in the appeal and cross-appeal." *Id*. at 372. We reverse in part, affirm in part, and remand for entry of judgment for defendant.

We review de novo as a question of law whether a claim is barred by a statute of limitations. *Scherer v Hellstrom*, 270 Mich App 458, 461; 716 NW2d 307 (2006).

We are to apply MCL 600.5807, which provides:

No person may bring or maintain any action to recover damages or sums due for breach of contract, or to enforce the specific performance of any contract unless, *after the*

---

[1] "Defendant," as used in this opinion, refers only to Ahrens Construction, Inc. Merchants Bonding Company, defendant's surety, settled with plaintiff and is not a party to this appeal.

*claim first accrued* to himself or to someone through whom he claims, he commences the action within the periods of time prescribed by this section.

\* \* \*

(8) The period of limitations is 6 years for all other actions to recover damages or sums due for breach of contract. [Emphasis added.]

Thus, MCL 600.5807(8) requires that an action to recover damages for breach of contract must be brought within six years after the claim first accrued. *Miller-Davis*, 489 Mich at 358; *Blazer Foods, Inc v Restaurant Properties, Inc*, 259 Mich App 241, 245; 673 NW2d 805 (2003).

With respect to accrual of a claim, MCL 600.5827 provides that except for cases covered by MCL 600.5829 to MCL 600.5838, "[a] claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." Sections 5829 to 5838 cover claims relating to possession of land, a mutual and open account, warranty, common carriers, life insurance, installment contracts, alimony, and malpractice. None of these provisions applies in this case. Although plaintiff presents arguments in its supplemental brief regarding certain warranty provisions, plaintiff's complaint did not include a claim for breach of warranty. *Miller-Davis*, 489 Mich at 359; *Miller-Davis*, 285 Mich App at 306.

A contract claim accrues when the wrong occurs, i.e., when the promise is breached, regardless of when damage results. MCL 600.5827; *Seyburn, Kahn, Ginn, Bess, Deitch & Serlin, PC v Bakshi*, 483 Mich 345, 355; 771 NW2d 411 (2009); *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 458; 761 NW2d 846 (2008). The "wrong" on which the contract claim is based is determined by examining the parties' contract. *Tenneco*, 281

Mich App at 458, citing *Scherer* 270 Mich App at 463. Although plaintiff asserts the breach of a so-called charge-back clause and an indemnification clause, the underlying basis for its claim is that defendant breached a contract condition providing that "[a]ll materials and/or work furnished on this order shall comply with the terms and requirements of the plans and specifications - where applicable."[2]

Plaintiff was the general contractor on a construction project that included building a natatorium for a YMCA recreational complex, and defendant was a subcontractor with the responsibility of installing a proprietary wooden roofing system over which other roofing materials would be installed by other subcontractors. *Miller-Davis*, 285 Mich App at 292-293, 309. The wrong that plaintiff alleged with respect to defendant's having failed to "comply with the terms and requirements of the plans and specifications" of the contract must have occurred on or before defendant completed its portion of the overall construction project. This conclusion is consistent with this Court's prior decisions. "A cause of action for breach of a construction contract accrues at the time work on the contract is completed." *Employers Mut Cas Co v Petroleum Equip, Inc*, 190 Mich App 57, 63; 475 NW2d 418 (1991), citing *Buckey v Small*, 52 Mich App 454, 455-456; 217 NW2d 422 (1974). In our prior opinion, we addressed the date when defendant completed its work on the project. In particular, we noted that defendant completed its work on the project by the end of February 1999 and certified to plaintiff that the work was complete on April 26, 1999, for the purpose of being paid.

---

[2] Plaintiff does not cite this provision in its complaint, but it is the only one that corresponds to plaintiff's theory of the case and the allegation in its complaint that defendant failed "to install the Roof System correctly and in compliance with the plans and specifications . . . ."

By the end of February 1999, defendant completed all its tasks regarding constructing the roof system, including installing all the wood parts, the vapor barrier, the T's and sub-T's [superstructures], the insulation, all of which were covered by [oriented strand board] nailed on top of two-by-four inch "sleepers" running perpendicular over the T's to the top ridge of the roof. . . . Defendant certified to plaintiff that it had completed its work on the roof on April 26, 1999, and plaintiff paid defendant for this work the next day.

\* \* \*

. . . [I]t is undisputed, and the trial court so found, that defendant completed its work on its part of the natatorium's roof by the end of February 1999. Thereafter, the evidence clearly establishes that another contractor completed the final phase of the roof's construction by attaching the roofing felt and the standing seam steel skin. Plaintiff's exhibit 9, the minutes of a work-progress meeting on February 18, 1999, indicates that over the prior two weeks Ahrens completed its roof work at the recreational building, and that work for the next two weeks contemplated subcontractor Architectural Glass & Metals' completing the metal roof at the recreation building. [*Miller-Davis*, 285 Mich App at 296-297, 309.]

We have not been presented any reason to revisit this analysis of when defendant completed the work it contracted with plaintiff to perform. Because defendant completed its work on the roof by the end of February 1999, the breach that plaintiff alleged—that defendant had failed to comply with the terms and requirements of the plans and specifications—must have occurred by that date. Further, because plaintiff did not file its complaint until May 12, 2005, more than six years after February 1999 and more than six years after plaintiff accepted the work through its payment at the end of April 1999, the statute of limitations barred those claims. MCL 600.5807(8); *Buckey*, 52 Mich App at 455-456.

Plaintiff asserts in its supplemental brief on remand that defendant waived application of the statute of limitations by not briefing and arguing the proper statute, MCL 600.5807(8). We find this argument disingenuous and reject it. At the outset of this case, defendant set forth several affirmative defenses to plaintiff's complaint. The affirmative defense defendant first asserted was the statute of repose. The second affirmative defense that defendant set forth was that plaintiff's claim was barred by the applicable statute of limitations. Throughout this litigation, in the trial court and on appeal, plaintiff has argued that MCL 600.5807(8) is the proper statute to determine whether its complaint was timely; defendant has argued that MCL 600.5839(1) was the proper statute for doing so. Our Supreme Court has now resolved the issue and remanded the case for this Court to apply MCL 600.5807(8) to determine whether plaintiff's breach of contract claims are time-barred. We find no reason not to comply with the remand instructions.

Plaintiff also argues that its claim accrued on June 11, 1999, the date the construction project was certified as being substantially complete by the YMCA, the architect, and plaintiff. Alternatively, plaintiff asserts that the date the certificate of occupancy was issued, August 2, 1999, is the pertinent accrual date. For the reasons already discussed, we reject these alternative accrual dates as applicable to when the purported breach of contract—the wrong—occurred. We note that the date of substantial completion, June 11, 1999, fixed the beginning of the one-year guarantee period that defendant provided regarding its work. Although the natatorium moisture problem was apparent almost immediately after occupancy, plaintiff made no claim

against defendant during the guarantee period.[3]

Plaintiff also asserts that defendant breached its contract in 2003 when defendant refused plaintiff's demand for corrective work that required deconstructing the natatorium's roof and reconstructing it according to a modified design that included application of a waterproofing element not in the original plans and specifications. Plaintiff asserts that defendant's refusal to perform the corrective work was a breach of the contract's so-called charge-back clause. This argument presents an issue of contract interpretation, which is a question of law we review de novo. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999).

The primary goal of interpretation of a contract is to honor the intent of the parties. *Tenneco*, 281 Mich App at 444. "[I]t is a court's obligation to determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning. If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *In re Egbert R Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). When a contract, though poorly drafted or clumsily arranged, fairly discloses only one meaning, it is not ambiguous. *Meagher v Wayne State Univ*, 222 Mich App 700, 722; 565 NW2d 401 (1997). Like a statute, a contract must be construed as a whole, and its terms must be construed in context. *Perry v Sied*, 461 Mich 680, 689 n 10; 611 NW2d 516

---

[3] Plaintiff sent letters to defendant dated January 28, 2000, and February 8, 2000, with notice of the moisture problem. The first letter noted that while others suspected defendant as a possible cause of the problem, plaintiff's vice president of construction management stated in the letter that plaintiff did "not agree with this assessment."

(2000). Thus, when reading the terms of a contract according to their commonly used meaning, courts must also consider that "under the doctrine of *noscitur a sociis*, a word or phrase is given meaning by its context or setting." *Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 215; 737 NW2d 670 (2007) (citations and quotation marks omitted).

The charge-back clause of the parties' eight-page purchase-order contract provides:

> Should you, the Subcontractor, at any time refuse to start said work promptly, neglect to supply a sufficient number of properly skilled workmen or sufficient materials of the property quality, or fail in any respect to prosecute the work with promptness and diligence, or if you should fail in performance of any of the agreements herein contained, MILLER-DAVIS COMPANY without prejudice to any other available remedy may, after twenty-four (24) hours written notice to you, provide any such labor or materials and deduct the cost thereof from any money then due or thereafter to become due you under this Subcontract; but if such expense and damage shall exceed such unpaid balance, you shall pay the difference to MILLER-DAVIS COMPANY.

We conclude that a fair reading of the charge-back clause in context does not admit of an interpretation that plaintiff may at any time it chooses, after plaintiff has accepted defendant's contract work and the project itself has been substantially completed, require defendant to correct work plaintiff believes is nonconforming. Rather, the paragraphs above and below the charge-back clause on the same page all relate to management and payment for defendant's work while the construction project is ongoing. The three paragraphs above the clause provide that "[t]ime of completion is of the essence of this order," that defendant must

follow the direction of plaintiff's construction manager, and that defendant must complete its work in a manner that does not interfere with or delay the work of other subcontractors. Below the charge-back clause, a paragraph requires defendant to comply with applicable safety laws and regulations. The final paragraph on the same page provides for payment to defendant, which "will be made each month equal to 90% of the value of the work satisfactorily completed . . . ." Moreover, the internal wording of the charge-back clause makes sense only if applied to the period when construction is ongoing, the subcontracted work is not complete, and money due under the contract remains unpaid. For these reasons, we conclude that the charge-back clause was intended only to ensure timely completion of the project by permitting plaintiff to intervene if defendant defaulted during the construction phase of the project.

Our reading of the charge-back clause is also consistent with defendant's having provided a one-year guarantee of its work from the date of substantial completion of the project. In contrast, plaintiff's reading of the charge-back clause would render superfluous defendant's one-year guarantee. Thus, we conclude, on the basis of reading the charge-back clause as a whole and its placement in the contract, that the clause does not give plaintiff the right to demand corrective work after the project has been substantially completed and defendant has been paid for its work. Consequently, defendant did not breach the charge-back clause in 2003 when it refused plaintiff's demand that it perform corrective work on the natatorium roof. Plaintiff could still have timely brought its breach of contract claim on the theory of nonconforming work, but its declaration of defendant's default in 2003 for failing to perform corrective work did not reset the accrual date of that claim under MCL 600.5807(8) and MCL 600.5827.

We further note that our reading of the charge-back clause is consistent with our prior analysis of that provision. In discussing whether "acceptance" of defendant's work occurred within the meaning of MCL 600.5839(1), we opined:

> Moreover, even if the owner of the improvement must trigger "acceptance," plaintiff as the general contractor-construction manager for the project was the authorized representative of the owner for purposes of supervising construction, deeming whether subcontractor work was acceptable under the subcontract's "charge-back" provision, and having the ability to withhold payment for unacceptable work. Here, the undisputed facts, and as found by the trial court, establish that defendant "completed the natatorium roof by February 18, 1999[,] . . . submitted its final request for pay on April 26, 1999, and Miller-Davis paid Ahrens the very next day." Although plaintiff asserts it never "accepted" defendant's work on the roof, plaintiff's own actions in accepting defendant's certification that the roof work had been completed, and then paying for that work, speaks louder than its litigation denials. In sum, we conclude that the facts establish that by the end of April 1999 plaintiff's actions constituted "acceptance of the improvement" defendant made to real property triggering the running of the six-year limitations period of MCL 600.5839(1). [*Miller Davis Co*, 285 Mich App at 311-312 (alterations in original).]

As discussed already, these dates also fixed the accrual date for plaintiff's breach of contract claim regarding alleged nonconforming work under the applicable statute of limitations, MCL 600.5807(8). *Employers Mut Cas Co*, 190 Mich App at 63.

The last contract claim that plaintiff asserted in its May 12, 2005, complaint is that defendant breached an indemnity clause by not reimbursing plaintiff for the costs associated with the 2003 corrective work, lost business profits, and its attorney fees for this action.

After a bench trial, the trial court ruled that plaintiff had no cause of action for contractual indemnity because "no claims, suits, actions, recoveries, or demands were ever made, brought or recovered against" plaintiff within the meaning of the indemnity clause in plaintiff's contract with defendant. This ruling is the subject of plaintiff's cross-appeal.

Regarding the statute of limitations on a promise to indemnify, "the period of limitations runs from 'when the indemnitee sustained the loss,' or 'when the promisor fails to perform under the contract.' " *Tenneco*, 281 Mich App at 458 (citations omitted). Under plaintiff's interpretation of the indemnity clause, the alleged breach of promise occurred in 2003 when defendant refused to reimburse plaintiff its costs associated with the corrective work on the roof of the YMCA's natatorium. This claim was clearly brought within the six-year period of limitations. MCL 600.5807(8). The issue remains whether the trial court correctly ruled that the indemnity clause of the parties' contract did not apply on the facts of this case. This is an issue of contract interpretation we review de novo, as already discussed. "An indemnity contract is to be construed in the same fashion as other contracts." *Zahn v Kroger Co*, 483 Mich 34, 40; 764 NW2d 207 (2009).

The indemnity clause of the parties' contract provides, in pertinent part:

> You as a Subcontractor/Supplier agree to ... indemnify Miller-Davis Company ... from and against all claims, damages, losses, demands, liens, payments, suits, actions, recoveries, judgments and expenses *including attorney's fees*, interest, sanctions, and court costs *which are made, brought, or recovered against Miller-Davis Company*, by reasons of or resulting from, but not limited to, any injury, damage, loss, or occurrence arising out of or resulting from the performance or execution of this Purchase Order and

caused, in whole or in part, by any act, omission, fault, negligence, or breach of the conditions of this Purchase Order by [defendant], its agents, employees, and subcontractors regardless of whether or not caused in whole or in part by any act, omission, fault, breach of contract, or negligence of Miller-Davis Company. The Subcontractor/Supplier shall not, however, be obligated to indemnify Miller-Davis Company for any damage or injuries caused by or resulting from the sole negligence of Miller-Davis Company.

You as Subcontractor/Supplier agree to defend, hold harmless and indemnify Miller-Davis Company, the Owner, the Architect and other parties for all liabilities, either in tort or contract, in the same manner and to the same extent that Miller-Davis Company is required to defend, hold harmless and indemnify the Owner, Architect or other parties pursuant to Miller-Davis Company's Contract with the Owner, unless the liability arises solely as a result of the negligence of Miller-Davis Company or its employees and agents. [Emphasis added.]

Plaintiff argues that the use of the word "all" in the indemnification clause means the clause is intended to provide the broadest possible coverage. Further, plaintiff argues, the indemnification clause requires that defendant indemnify plaintiff for *"all . . . damages, losses . . . and expenses including attorney's fees"* caused by defendant's breach of contract, i.e., the failure to comply with the contract's plans and specifications. Plaintiff also asserts that the trial court clearly erred by finding that plaintiff was not under "demand" when it performed the corrective work because the indemnification clause is not conditioned on the filing of a formal claim or suit against plaintiff.

We conclude that the trial court correctly ruled that no one had brought a claim or demand against plaintiff within the meaning of the indemnification clause. Thus, because no claims or demands were "made, brought or

recovered against" plaintiff, defendant did not breach this provision of the contract. Moreover, plaintiff cannot use the alleged breach of this provision (and thus plaintiff's completion of the corrective work) as an alternative accrual date for its underlying breach of contract claim regarding defendant's alleged failure to comply with the terms and requirements of the plans and specifications.

We read the indemnification clause as those clauses have traditionally been applied: to apportion ultimate liability among the contracting parties for liability to third parties. See *Baker Contractor, Inc v Chris Nelsen & Son, Inc*, 1 Mich App 450, 454; 136 NW2d 771 (1965). Indemnification clauses are not intended to be used as a sword or shield in disputes between the contracting parties with respect to the performance of the contract itself. *Id.* This view of the clause is buttressed by the second paragraph extending defendant's duty to indemnify to the other contracting parties from "all liabilities, either in tort or contract tort or contract."

Additionally, we note that even if the owner's "demand" that plaintiff correct the natatorium moisture problem was within the meaning of the indemnification clause, we would still affirm the trial court on this issue on alternative grounds. To the extent the owners demanded that plaintiff correct the natatorium moisture problem, the demand arose out of the owner's contract with plaintiff, not plaintiff's subcontract with defendant. "When a trial court reaches the right result for the wrong reason, the ruling will not be disturbed." *Burise v City of Pontiac*, 282 Mich App 646, 652 n 3; 766 NW2d 311 (2009).

Moreover, plaintiff failed to present sufficient proof at trial that the moisture problem was caused by defendant's failure to follow plans and specifications or

by faulty workmanship. There is no evidence in the record that supports a conclusion that defendant's alleged defective workmanship caused the moisture problem other than an inference drawn from the fact that after the corrective work it was no longer present. The logical force of this inference, however, is totally lacking because the corrective work contained three important elements that were not present in the original plans: (1) a waterproofing agent was added, (2) expanding foam insulation sealed any gaps between the structural support and the Styrofoam block, and (3) butyl caulk sealant was applied to the top of all T superstructures.

A party claiming a breach of contract must establish by a preponderance of the evidence (1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach. *Stevenson v Brotherhoods Mut Benefit*, 312 Mich 81, 90-91; 19 NW2d 494 (1945); *Residential Ratepayer Consortium v Pub Serv Comm*, 198 Mich App 144, 149; 497 NW2d 558 (1993) (recognizing that the "preponderance of the evidence" is the quantum of proof in civil cases); see M Civ JI 142.01. This standard means the evidence must persuade the fact-finder that it is more likely than not that the proposition is true. M Civ JI 8.01. A party may meet its burden with circumstantial evidence, *Karbel v Comerica Bank*, 247 Mich App 90, 97; 635 NW2d 69 (2001), and the fact-finder may weigh both the quality and the quantity of evidence presented, *Kelly v Builders Square, Inc*, 465 Mich 29, 39; 632 NW2d 912 (2001).

The specific weakness in plaintiff's case is the lack of evidence to causally link defendant's alleged noncon- forming workmanship to the moisture problem, which is the basis for plaintiff's claim for damages in the form

of expenses to correct the cold-weather condensation problem in the YMCA's natatorium. "Damages are an element of a breach of contract action." *New Freedom Mtg Corp v Globe Mtg Corp*, 281 Mich App 63, 69; 761 NW2d 832 (2008). Like other civil actions, the plaintiff in a breach of contract case must establish a causal link between the alleged improper conduct of the defendant and the plaintiff's damages. See *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003), and *Farm Credit Servs of Michigan's Heartland, PCA v Weldon*, 232 Mich App 662, 679; 591 NW2d 438 (1998). Because of the similarity between this element of proof in contract cases and the element of causation necessary in tort cases, it is appropriate to draw on the latter for guidance regarding the necessary quality of evidence to satisfy this burden of proof.

This Court in *Karbel*, 247 Mich App at 98, examined the "the basic legal distinction between a reasonable inference and impermissible conjecture" by quoting *Skinner v Square D Co*, 445 Mich 153, 164-165; 516 NW2d 475 (1994), quoting *Kaminski v Grand Trunk W R Co*, 347 Mich 417, 422; 79 NW2d 899 (1956):

> " '[A] conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. *There may be 2 or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any 1 of them, they remain conjectures only.* On the other hand, if there is evidence which points to any 1 theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence.' "

In *Skinner*, 445 Mich at 164, the Court noted that to be adequate, "a plaintiff's circumstantial proof must facilitate reasonable inferences of causation, not mere speculation."

" 'The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. *A mere possibility of such causation is not enough*; and when the matter remains one of pure speculation or conjecture, or *the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.*' " [*Id.* at 165, quoting *Mulholland v DEC Int'l Corp*, 432 Mich 395, 416, n 18; 443 NW2d 340 (1989), quoting Prosser & Keeton, Torts (5th ed), § 41, p 269 (emphasis added).]

Although these cases considered when a plaintiff had presented sufficient evidence to allow submission of the case to a jury, the same principles apply equally to cases tried before a judge without a jury. See *Mich Aero Club v Shelley*, 283 Mich 401, 403-404, 410-411; 278 NW 121 (1938).

The only evidence in the record that supports finding that defendant's allegedly defective workmanship caused the natatorium moisture problem is an inference drawn from the fact that after the corrective work the problem was not present. The logical force of this inference is totally lacking because the corrective work contained three important elements, as noted already, that were not present in the original plans and specifications. Without other evidence, it is equally likely that the elements added to the reconstructed roof, as opposed to correcting the alleged defects, prevented the condensation problem. As such, it is mere speculation or conjecture to infer that this evidence established a causal link between defendant's workmanship and the moisture problem. *Skinner*, 445 Mich at 164-165; *Karbel*, 247 Mich App at 93. "A judgment may not be based upon speculation or conjecture." *Shelley*, 283 Mich at 412. Consequently, even if the indemnity clause applied on these facts, the trial court correctly entered a judg-

ment of no cause of action on plaintiff's claim for contractual indemnity. We will affirm the trial court when it reaches the right result even if it does so for the wrong reason. *Burise*, 282 Mich App at 652 n 3.

Finally, plaintiff asserts for the first time in its supplemental brief on remand that certain sections in form contract documents of the American Institute of Architects (AIA), "General Conditions of the Contract for Construction," are pertinent to its contract claims against defendant. Although the documents were admitted at trial, the record is not clear whether they were part of the contract between plaintiff and defendant. Nor does it appear that any argument was presented to the trial court concerning their application to this case. Finally, plaintiff's complaint did not refer to the documents, nor did it have attached to it the pertinent parts on which plaintiff now wishes to rely. See MCR 2.113(F). Under these circumstances, plaintiff has waived any claims regarding the AIA documents.

We reverse in part, affirm in part, and remand for entry of judgment for defendant. We do not retain jurisdiction.

JANSEN, P.J., and HOEKSTRA and MARKEY, JJ., concurred.