# STATE OF MICHIGAN

# COURT OF APPEALS

NATURIPE FOODS, LLC,

       Plaintiff-Appellee,

v

SIEGEL EGG COMPANY, INC.,

       Defendant-Appellant.

UNPUBLISHED
September 8, 2016

No. 327172
Kent Circuit Court
LC No. 12-010585-CK

Before: SERVITTO, P.J., and MARKEY and GLEICHER, JJ.

PER CURIAM.

In this breach of contract action, defendant Siegel Egg Company, Inc., appeals as of right the judgment in favor of plaintiff, Naturipe Foods, LLC. We affirm.

Plaintiff is the selling and marketing arm of, among other entities, Michigan Blueberry Growers. Defendant is a food distribution company that sells, among other things, blueberries to commercial bakeries. On August 19, 2011, plaintiff offered to sell defendant frozen blueberries from the 2011 crop grown in Michigan and Georgia. Defendant's buyer, Arnaldo DaCruz, crossed out the reference to Georgia blueberries, wrote "GRADE A" under the reference to Michigan blueberries, and signed the offer. Below DaCruz's signature read, "Subject to Seller's Terms and Conditions." Thus, plaintiff contracted to deliver 316,800 pounds of frozen Michigan blueberries from the 2011 crop to defendant for $2 a pound, starting on November 1, 2011. The deliveries were to be completed by August 24, 2012. The validity of this contract is not in dispute.

Plaintiff delivered two shipments of blueberries in February and March 2012. Despite apparently realizing that the shipments were sub-Grade A, defendant sent the blueberries to its end-use customers who generally found them unusable for their purposes. As a result, defendant never requested nor paid for the remaining blueberries due under the contract, which expired in August 2012.

In November 2012, plaintiff sued defendant for breach of contract. The trial court eventually granted summary disposition in favor of plaintiff as to defendant's liability and held a jury trial on damages. On April 13, 2015, the trial court entered a judgment in favor of plaintiff in the amount of $723,578.83. This award represented a $327,644.98 jury verdict, $201,900.65 in attorney fees, $9,545.71 in costs, and $184,198.49 in prejudgment interest.

Defendant first argues that the trial court erred in granting summary disposition in favor of plaintiff on the issue of whether plaintiff's "Terms and Conditions" were incorporated into the parties' agreement. We disagree.

This Court reviews de novo a trial court's grant of summary disposition under MCR 2.116(C)(10). *Ernsting v Ave Maria College*, 274 Mich App 506, 509; 736 NW2d 574 (2007). "When deciding a motion for summary disposition under MCR 2.116(C)(10), a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party." *Id*. at 509-510. All reasonable inferences are to be drawn in favor of the nonmoving party. *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 NW2d 211 (2010). "Summary disposition is proper under MCR 2.116(C)(10) if the documentary evidence shows that there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Ernsting*, 274 Mich App at 509. "A genuine issue of material fact exists when the record, giving the benefit of any reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds could differ." *Id*. at 510.

The interpretation of a contract, including whether contract language is ambiguous, is reviewed de novo. See *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003).

"Where one writing references another instrument for additional contract terms, the two writings should be read together." *Forge v Smith*, 458 Mich 198, 207; 580 NW2d 876 (1998). That is, "[i]n a written contract a reference to another writing, if the reference be such as to show that it is made for the purpose of making such writing a part of the contract, is to be taken as a part of it just as though its contents had been repeated in the contract." *Id*. at 207 n 21 (citations and quotation marks omitted). Where additional documents or terms are made part of a contract by reference, the parties are bound by those additional terms even if they have never seen them. See *Ginsberg v Myers*, 215 Mich 148, 150-151; 183 NW 749 (1921). "It is well settled that the failure of a party to obtain an explanation of a contract is ordinary negligence. Accordingly, this estops the party from avoiding the contract on the ground that the party was ignorant of the contract provisions." *Scholz v Montgomery Ward & Co, Inc*, 437 Mich 83, 92; 468 NW2d 845 (1991).

The plain, unambiguous language of the contract incorporated the Terms and Conditions. The contract provided that it was "Subject to Seller's Terms and Conditions." It is undisputed that plaintiff was the "Seller." It is also undisputed that the referenced "Terms and Conditions" are the Terms and Conditions at issue in this case. DaCruz did not cross out or otherwise modify the language providing that the contract was "Subject to Seller's Terms and Conditions," as he did with other portions of the contract. In other words, there is no meaning for this contract provision other than to indicate that the parties' agreement was subject to the Terms and Conditions. *Port Huron Ed Ass'n, MEA/NEA v Port Huron Area School Dist*, 452 Mich 309, 323; 550 NW2d 228 (1996). Because a party may incorporate the terms of another document by reference into a contract without attaching or otherwise providing a copy of the document, the trial court did not err in granting summary disposition in favor of plaintiff on the issue of whether the Terms and Conditions were incorporated into the parties' agreement. *Ginsberg*, 215 Mich at 150-151.

Defendant's arguments to the contrary are unpersuasive. Defendant asserts that none of its employees were ever provided with a copy of the Terms and Conditions. However, a party is bound by the terms of an incorporated document even if the party has never seen the document. *Ginsberg*, 215 Mich at 150-151. To the extent defendant argues that plaintiff never explained the applicable Terms and Conditions or never explained what the phrase "Subject to Seller's Terms and Conditions" meant, it was defendant's duty to obtain an explanation of the contract term. Defendant's apparent failure to do so constitutes negligence and estops it from asserting that the Terms and Conditions do not apply on the grounds of ignorance. *Scholz*, 437 Mich at 92. Defendant's argument that the contract stated that it was "Page 1 of 1" and, therefore, encompassed the entirety of the parties' agreement, is also unpersuasive. It is well established that a contract may incorporate "another" document by reference. Thus, even if the contract is considered to be only one page, its unambiguous language still incorporates by reference the Terms and Conditions. *Forge*, 458 Mich at 207.

Defendant next argues that, even if the Terms and Conditions apply, the warranty provision therein did not concern defendant's purported cancelation of the contract. We disagree.

The provision at issue provides:

> **10.     WARRANTY.** Seller warrants only that goods to be delivered shall conform to any approved samples and/or specifications set forth in this agreement. If no specifications are included and no samples are taken, then the goods shall conform to at least USDA Grade B standards.[1]
>
> **THIS WARRANTY IS IN LIEU OF ANY OTHER WARRANTY OBLIGATION OF SELLER. SELLER MAKES NO OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE WHICH ARE HEREBY DISCLAIMED AND EXCLUDED BY SELLER. SELLER SHALL NOT BE LIABLE TO BUYER OR ANY OTHER PARTY OR PERSON FOR ANY LOSS, CLAIM, DEMAND, LIABILITY, COST, DAMAGE OR EXPENSE OF ANY KIND CAUSED OR ALLEGED TO BE CAUSED, DIRECTLY OR INDIRECTLY, BY THE GOODS OR BY ANY INADEQUACIES THEREOF, INCLUDING, WITHOUT LIMITATION, ANY LOSS OF BUSINESS, PROFITS, CONSEQUENTIAL, INCIDENTAL, SPECIAL OR OTHER DAMAGES OF ANY NATURE, WHETHER ARISING IN TORT, CONTRACT, WARRANTY OR STRICT LIABILITY.**
>
> Seller has the option of either replacing defective goods or crediting Buyer for the purchase price for such goods. Seller will not accept the return of any

---

[1] Plaintiff does not dispute that DaCruz's notation on the contract required it to supply Grade A blueberries.

goods without its prior written consent. In no event shall Seller be responsible for incidental or consequential damages from any defect in the goods or the application or use of the goods to or with Buyer's products or breach of warranty including, but not limited to, Buyer's, user's or any other person's loss of material or profits, increased expense of operation, downtime, or damages arising out of any products liability claim and, in no event shall Seller's liability (whether under the theories of breach of contract or warranty, negligence, or strict liability) exceed the contract price paid for the goods delivered by Seller. These remedies are the exclusive and sole remedies for any breach of warranty or contract. Buyer shall give written notice to the Seller of any claim for breach of warranty within thirty (30) days after receipt of the goods if the breach or defect in the goods was or should have been discovered upon inspection of the goods, and Buyer shall give written notice to the Seller of any other claim for breach of warranty within ninety (90) days after its [sic] discovers or should have discovered such breach. Any remedy of the Buyer against the Seller shall be barred unless notice is given in accordance with the foregoing provisions. All actions by the Buyer for breach of warranty against the Seller shall be brought within one (1) year after the cause of action thereon accrues. Seller shall be given a reasonable and prompt opportunity to investigate any goods concerning which a claim is made.

Defendant argues that, because cancellation of the contract is not specifically mentioned in the warranty provision, the warranty provision does not apply. This argument is without merit. Defendant concedes that it cancelled the remainder of the contract because the first two shipments were sub-Grade A quality. This failure to deliver Grade A blueberries constituted a breach of warranty on the part of plaintiff under the Terms and Conditions because the language of the provision provides that "[s]eller *warrants* only that the goods to be delivered shall" be Grade A blueberries. (Emphasis added.) The Terms and Conditions provide that, in the case of such a breach of warranty, "[s]eller has the option of either replacing defective goods or crediting Buyer for the purchase price for such goods . . . . These are the *exclusive and sole remedies* for any breach of warranty or contract." (Emphasis added.) Thus, the exclusive and sole remedies defendant had for plaintiff's delivery of substandard blueberries were a replacement of blueberries or a credit for their price. Defendant sought neither. Moreover, the Terms and Conditions explicitly provide that, if defendant did not give plaintiff 30 days' notice of the breach of warranty, "any remedy" was barred. As discussed below, defendant failed to provide such notice. Because "any remedy" was barred due to defendant's failure to provide notice combined with the fact that the "exclusive and sole remedies" available to defendant were replacement or a credit, the trial court did not err in ruling that the warranty provision applied to the situation at hand and did not allow defendant to cancel the remainder of the contract.[2]

---

[2] Pursuant to this ruling, we need not address whether defendant was entitled to cancel the contract pursuant to Michigan's Uniform Commercial Code, MCL 440.2101 *et seq*.

Defendant also cannot establish plain error affecting substantial rights with regard to its unpreserved argument that cancellation does not fall within the meaning of "remedy" in the warranty provision. *Cheesman v Williams*, 311 Mich App 147, 161; 874 NW2d 385 (2015).

In interpreting a contract, undefined words are to be afforded their "plain and ordinary meaning." *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). The plain and ordinary meaning of words "may be determined by consulting dictionaries." *McGrath v Allstate Ins Co*, 290 Mich App 434, 439; 802 NW2d 619 (2010). "Remedy" is defined in relevant part as "[t]he means of enforcing a right or preventing or redressing a wrong" and "[a] right by which an aggrieved party may seek relief without resort to a tribunal." Black's Law Dictionary (10th ed). Similarly, in the context of the UCC, this Court has noted that "remedy" is "broadly define[d] . . . as 'any remedial right to which an aggrieved party is entitled with or without resort to a tribunal.' " *American Bumper & Mfg Co v Transtechnology Corp*, 252 Mich App 340, 348; 652 NW2d 252 (2002), quoting MCL 440.1201(34). Under these definitions, cancellation is a "remedy" and was, therefore, barred due to defendant's failure to provide plaintiff with notice of the substandard blueberries within 30 days. Cancellation was defendant's attempt to redress a wrong, i.e., plaintiff's failure to deliver blueberries in accordance with the contract. Likewise, cancellation was defendant's attempt to seek relief from the substandard blueberries without resorting to a tribunal. Thus, under both the dictionary definition and the warranty provision of the Terms and Conditions, defendant was not entitled to cancel the remainder of the contract without providing the required 30-day notice to plaintiff. As discussed below, there is no question of fact that defendant failed to provide such notice. Accordingly, defendant cannot establish that error occurred and, therefore, cannot establish plain error affecting its substantial rights with regard to this claim. *Cheesman*, 311 Mich App at 161.

Next, defendant argues that the 90-day notice requirement in the warranty provision, not the 30-day requirement, applied to this situation and that defendant met that requirement. We disagree.

"[A]n unambiguous notice-of-claim provision [in a contract] setting forth a specified time within which notice must be provided is enforceable[.]" *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 367-368; 817 NW2d 504 (2012).

Under the plain, unambiguous language of the warranty provision, whether the 30- or 90-day notice period applies depends on whether "the breach or defect in the goods was or should have been discovered upon inspection of the goods[.]" The only defect at issue was that the blueberries delivered to defendant in February and March 2012 were sub-Grade A quality.

The trial court did not err in ruling that the 30-day notice requirement applied and that defendant failed to comply therewith. The Terms and Conditions provided that plaintiff "warrants only that goods to be delivered shall conform to any . . . specifications set forth in this agreement." It is undisputed that the parties' agreement specified that plaintiff would deliver Grade A blueberries. Thus, it would be a breach of warranty were plaintiff to deliver sub-Grade A blueberries. The 30-day written notice requirement applied to this case because defendant actually discovered upon inspection of the goods that at least some of the delivered blueberries were sub-Grade A.

In their depositions, both DaCruz and Kenneth Siegel, defendant's CEO, testified that they personally inspected, at least in part, the February and March 2012 shipments and found them to be clearly sub-Grade A. In other words, plaintiff's breach of warranty for failing to supply Grade A blueberries "was . . . discovered upon inspection of the goods[.]" Accordingly, defendant was required to give plaintiff written notice of this breach of warranty within 30 days after the receipt of the blueberries under the plain, unambiguous language of the warranty provision in the Terms and Conditions. There is no record evidence to suggest, and defendant does not allege, that it provided plaintiff such written notice within 30 days of the delivery of either the February or March 2012 shipments. Even viewing the evidence in the light most favorable to defendant, the first written notice provided to plaintiff came in the form of a May 31, 2012 email which was necessarily provided more than 30 days after the receipt of the February and March shipments. Because defendant failed to comply with the applicable 30-day notice requirement, under the plain, unambiguous language of the contract, "[a]ny remedy of the Buyer against the Seller shall be barred" and "[t]hese remedies are the exclusive and sole remedies for any breach of warranty or contract."

Accordingly, the trial court did not err in granting summary disposition in favor of plaintiff on the issues of whether the 30-day notice requirement applied and whether defendant complied with that requirement. *Ernsting*, 274 Mich App at 509-510; *Klapp*, 468 Mich at 463.

Defendant does not challenge DaCruz's and Siegel's testimony regarding their inspections of the two shipments. Rather, defendant argues that only its end-use customers, and not its own employees, could determine whether the blueberries met the specifications of the parties' agreement. This argument is without merit. Contracts are to be construed according to their plain language and this Court will not read terms into a contract. See *Greenville Lafayette, LLC, v Elgin State Bank*, 296 Mich App 284, 291; 818 NW2d 460 (2012). There is simply no language in the parties' agreement or the Terms and Conditions to suggest that defendant's end users were the only parties empowered to determine whether the delivered blueberries were Grade A quality. Defendant argues that, because plaintiff knew that it was not the end user of the blueberries, there was a "reasonable inference" that it could not determine whether the blueberries met the contract specifications. Even if plaintiff was aware of this fact, it would constitute extrinsic evidence of the parties' intent, which is not to be considered in interpreting unambiguous contract terms. See *Klapp*, 468 Mich at 469-470. In sum, because the language of the parties' agreement and the Terms and Conditions are completely devoid of any reference to defendant's end users being the ultimate arbiters of whether plaintiff provided a product that satisfied its obligations, defendant's argument on this point fails.

Finally, defendant argues that the trial court abused its discretion in allowing plaintiff to present evidence of its 2012 blueberry crop at trial. We agree; however, because the trial court's error was harmless, defendant is not entitled to reversal.

"A trial court's decision whether to admit evidence is reviewed for an abuse of discretion, but preliminary legal determinations of admissibility are reviewed de novo; it is necessarily an abuse of discretion to admit legally inadmissible evidence." *Albro v Drayer*, 303 Mich App 758, 760; 846 NW2d 70 (2014).

"A party claiming a breach of contract must establish by a preponderance of the evidence . . . that the party asserting breach of contract suffered damages as a result of the breach." *Miller-Davis Co v Ahrens Constr, Inc (On Remand)*, 296 Mich App 56, 71; 817 NW2d 609 (2012), rev'd in part on other grounds 495 Mich 161 (2014).

At trial, plaintiff was required to establish by a preponderance of the evidence that it could have fulfilled its obligation under the parties' agreement had defendant not canceled the contract. Thus, plaintiff sought to introduce evidence that its inventory of 2011 Grade A blueberries was sufficient to fulfill its obligation to defendant by August 24, 2012, the date specified in the agreement. Melanie LaPerriere, plaintiff's employee, testified that plaintiff's inventory records, which were admitted into evidence, indicated that in March 2012, plaintiff possessed 745,000 pounds of Grade A or better blueberries from the 2011 crop and by August, 2012, they still had 342,000 pounds. However, she also testified that the records indicated that, in September 2012, after the influx of the 2012 crop, plaintiff possessed 4,200,000 pounds of Grade A or better blueberries. Defendant appears to argue that this testimony concerning the 2012 crop was inadmissible as irrelevant.

> Generally, all relevant evidence is admissible and irrelevant evidence is not. Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence to the action more probable or less probable than it would be without the evidence. The trial court also has discretion to exclude even relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury. [*Morales v State Farm Mut Auto Ins Co*, 279 Mich App 720, 729-730; 761 NW2d 454 (2008) (quotation marks and citation omitted); see also MRE 401-403.]

The evidence regarding plaintiff's 2012 blueberry crop was irrelevant. Evidence of plaintiff's inventory was relevant to make more or less probable one fact of consequence at trial—whether plaintiff could have fulfilled its obligation under the parties' agreement but for defendant's cancelation of the contract. It is undisputed that to fulfill the contract, plaintiff would have had to deliver to defendant, by August 24, 2012, 237,600 pounds of 2011 Grade A blueberries. Plaintiff's 2012 crop inventory was completely irrelevant to that inquiry, in that it had no tendency to make more or less likely the fact whether plaintiff possessed sufficient 2011 inventory. Plaintiff did not argue, and the contract does not support, that the 2012 inventory could have been used to fulfill its obligation under the agreement. Because evidence of plaintiff's 2012 blueberry crop inventory was irrelevant, it should not have been admitted. *Morales*, 279 Mich App at 729-730. Nonetheless, this evidentiary error does not require reversal because it was harmless.

"[T]he erroneous admission of evidence is not a basis for reversal unless allowing the lower court's judgment to stand would be 'inconsistent with substantial justice.' " *Albro*, 303 Mich App at 765, quoting MCR 2.613(A). In other words, evidentiary error does not require reversal if it was harmless. *Id.*; *Detroit/Wayne Co Stadium Auth v Drinkwater, Taylor & Merrill, Inc*, 267 Mich App 625, 652; 705 NW2d 549 (2005).

Any error in the admission of evidence concerning plaintiff's 2012 blueberry crop was harmless because plaintiff presented evidence to support the jury's implicit finding that it could have satisfied its obligations under the contract by providing defendant with a sufficient quantity of 2011 Grade A blueberries. The jury awarded plaintiff the full measure of its requested damages, i.e., the balance owed by defendant under the parties' agreement. Thus, the jury implicitly found that plaintiff could have fulfilled its remaining obligations under the agreement.

It is undisputed that the two deliveries of blueberries each weighed approximately 39,600 pounds. Thus, plaintiff delivered to defendant approximately 79,200 pounds of blueberries. The contract called for delivery of 316,800 pounds. Thus, to have fulfilled its remaining obligation under the contract after defendant's cancelation, plaintiff would have had to deliver approximately 237,600 pounds of 2011 Grade A blueberries. At trial, inventory records for plaintiff's blueberry reserves were admitted without objection. LaPerriere testified that the records indicated that, in March 2012, plaintiff possessed 745,000 pounds of Grade A or better blueberries from the 2011 crop and by August, 2012, they still had 342,000 pounds. The parties' contract required plaintiff to provide the total amount of blueberries by August 2012. The jury could thus have reasonably concluded that plaintiff could have fulfilled the remainder of its contract with defendant, which called for delivery of an additional 237,600 pounds of 2011 Grade A blueberries by August 2012. See *Cleary v Turning Point*, 203 Mich App 208, 210; 512 NW2d 9 (1993) (holding that, in light of the evidence properly presented that supported the jury's verdict, other evidentiary error was harmless). Because plaintiff presented properly admitted evidence to support the jury's implicit finding that it could have fulfilled the terms of the contract, any error in the admission of testimony concerning the 2012 blueberry crop was harmless and does not require reversal. *Albro*, 303 Mich App at 765; MCR 2.613(A).

Affirmed.

/s/ Deborah A. Servitto
/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher

-8-