*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AUTUMN ACRES SENIOR VILLAGE, INC.,

Plaintiff/Counterdefendant-
Appellant,

v

VILLAGE OF MAYVILLE,

Defendant/Counterplaintiff-
Appellee.

UNPUBLISHED
November 19, 2019

No. 343485
Tuscola Circuit Court
LC No. 15-029068-CZ

---

AUTUMN ACRES SENIOR VILLAGE, INC.,

Plaintiff/Counterdefendant-
Appellee,

v

VILLAGE OF MAYVILLE,

Defendant-Appellant.

No. 343492
Tuscola Circuit Court
LC No. 15-029068-CZ

---

Before: M. J. KELLY, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

In Docket No. 343485, plaintiff/counterdefendant, Autumn Acres Senior Village, Inc., appeals by right the trial court's order declaring no cause of action on its contract and regulatory taking claims against defendant/counterplaintiff, the Village of Mayville. In Docket No. 343492, defendant appeals by right the same order dismissing its counterclaims seeking declaratory relief on the basis that plaintiff violated the Safe Drinking Water Act (SDWA), MCL 325.1001 *et seq.*, and the Village of Mayville Code. Because there are no errors warranting relief, we affirm.

-1-

# I. BASIC FACTS

The dispute in this case arose after the installation of a nonfunctional meter pit on plaintiff's property. Relevant to this appeal, in 2007, approximately 360 feet of eight-inch water main was extended north along Roller Way on plaintiff's property from defendant's Main Street. A permit, however, was obtained for only 140 feet of water main, and at trial the parties disputed whether and to what extent defendant's public-works superintendent, Roger Sweet, was involved in installing the extra water main. The record reflects that Sweet did not inform defendant of the additional main and, following Sweet's death in 2011, there was a question regarding when defendant's new public-works superintendent became aware of the water-main extension.

Over a period of time, plaintiff and defendant discussed adding additional housing to plaintiff's development,[1] and in 2013, the parties' representatives discussed how the new housing would be serviced by water and sewer. Andy Hecht, defendant's new public-works superintendent, testified that plaintiff and defendant agreed that a meter pit and master meter would be installed on plaintiff's property for a one-time tap-in fee of $1,800, with plaintiff able to add water connections to the master meter, and his testimony was corroborated by testimony from some of defendant's council members. In contrast, plaintiff's owner, Clare Roller, testified that there was no agreement to install a meter pit, but rather that there was only an agreement that the housing would be provided with water service.

In August 2013, a meter pit was installed on plaintiff's property, but after its installation the pit filled with groundwater. Hecht testified that the pit had not been finished and required a riser and metal cover. However, Roller asserted that defendant simply refused to fix the pit. During the ensuing dispute, plaintiff attached its new housing into the water system with unauthorized connections, and defendant eventually discovered that the eight-inch water main extended more than 140 feet into plaintiff's property. Hecht stated that he attempted to finish or fix the meter pit but was ordered off the property, and that was the only thing that prevented him from completing the work. Roller denied that assertion, testifying that while he was in Florida for the winter Hecht called him and said "he was gonna finish the pit," but Roller told Hecht not to put anything on the pit and charge him for it until after Roller got back.

During an action in the district court, plaintiff was ordered to disconnect its additional housing from the water system. Plaintiff subsequently filed claims for breach of contract, equitable contract, unjust enrichment, promissory estoppel, and regulatory taking. Defendant filed a counterclaim that sought declaratory judgment for violations of the SDWA and Mayville Code, asking the trial court to order plaintiff to disconnect the rest of plaintiff's properties from the water system on the basis that they were attached to the unapproved eight-inch water main. Following a jury trial, the jury returned a verdict finding that the parties had a contract but defendant did not breach it. Thereafter, the trial court determined that plaintiff had no cause of action for equitable contract or regulatory taking and that defendant had no cause of action for declaratory relief.

---

[1] Plaintiff is an independent living community.

## II. EQUITABLE CONTRACT

## A. STANDARD OF REVIEW

Plaintiff argues that the trial court should have granted relief in equitable contract because the jury verdict was inconsistent and the court could have implied a contract between the parties in equity. A trial court's dispositional ruling on an equitable matter is reviewed de novo. *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 193; 7zGATranscriptNew29 NW2d 898 (2006).

B. ANALYSIS

An arguably inconsistent jury verdict must be upheld if there is an interpretation of the evidence that provides a logical explanation for the jury's findings. *Moore v Detroit Entertainment, LLC*, 279 Mich App 195, 227; 755 NW2d 686 (2008). "A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). A valid contract requires "mutual assent or a meeting of the minds on all the essential terms." *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 453; 733 NW2d 766 (2006). Furthermore, a party who first breaches a contract may not maintain an action against another party for a subsequent failure to perform the contract. *Michaels v Amway Corp*, 206 Mich App 644, 650; 522 NW2d 703 (1994).

At trial, Hecht and other water committee members testified that, during the June 2013 meeting on plaintiff's property, it was agreed that a master meter pit would be installed on the property. While Roller testified that plaintiff had not agreed to the installation of a meter pit, the jury was free to reject his testimony because it is the role of the finder of fact to determine the credibility of the witnesses. See MCR 2.613(C). Similarly, although Roller testified that he did not order defendant's agents off his property but merely asked them to wait for him to return from Florida, the jury could have chosen to credit defendant's president and Hecht, who both testified that they were ordered off the property when they attempted to fix the meter pit. Based on the foregoing, we conclude that there was sufficient evidence to support that the jury's verdict finding a contract but no breach. The verdict was, therefore, not inconsistent, so the court did not err by denying plaintiff relief on that basis.

Additionally, because the jury's verdict was not inconsistent and because the jury found a contract existed, the trial court properly decided not to imply a contract in equity. See *Morris Pumps*, 273 Mich App at 194 (stating that courts will not imply a contract when there is an express contract between the same parties on the same subject).

III. REGULATORY TAKING

Plaintiff next argues that the trial court erred by concluding that there was no regulatory taking on the basis that it improperly applied the balancing test in *Penn Central Transp Co v New York City*, 438 US 104; 98 S Ct 2646; 57 L Ed 2d 631 (1978). Specifically, plaintiff argues that the trial court only considered one of the *Penn Central* factor's when denying plaintiff's request for relief.

The Michigan Constitution prohibits the government from taking private property without compensation. Const 1963, art 10, § 2. A law may constitute a taking if its "application goes too far in impairing a property owner's use of his land." *Bevan v Brandon Twp*, 438 Mich 385, 390; 475 NW2d 37 (1991) (quotation marks and citation omitted). If a taking does not completely deprive the property of economically viable use, the owner may proceed under the traditional regulatory takings analysis, which is derived from the United States Supreme Court's decision in *Penn Central*, 438 US at 124-125. *K & K Constr, Inc v Dep't of Natural Resources*, 456 Mich 570, 587-588; 575 NW2d 531 (1998). Under this balancing test,

a reviewing court must engage in an ad hoc, factual inquir[y], centering on three factors: (1) the character of the government's action, (2) the economic effect of the regulation on the property, and (3) the extent by which the regulation has interfered with distinct, investment-backed expectations. [*Id*. at 577 (quotation marks and citation omitted, alteration in original).]

Here, the trial court considered each of these factors. It found that defendant's water ordinance pursued a legitimate state interest of promoting public health. It determined that plaintiff's property was not unduly burdened by the ordinance because plaintiff was capable of putting in a meter pit or obtaining water through an alternative method, despite that plaintiff did not wish to pay the cost associated with doing so. It also found that plaintiff had put some money into the property, but it concluded that the ordinance did not interfere with plaintiff's reasonable expectations because plaintiff could still put in water lines at some cost. Accordingly, the trial court did, in fact, consider each of the *Penn Central* factors as they applied to plaintiff's case, and the record does not support plaintiff's argument that the trial court only considered plaintiff's expectations when rendering its decision.[2]

## IV. STATUTORY COMPLIANCE

### A. STANDARD OF REVIEW

Defendant argues that the trial court erred when it found that plaintiff did not violate the SDWA or defendant's water code by extending the eight-inch main more than 140 feet onto plaintiff's property. This Court reviews de novo the trial court's decision in a declaratory-judgment action. *Flanders Indus, Inc v Michigan*, 203 Mich App 15, 20; 512 NW2d 328 (1993). We review for clear error the trial court's findings of fact following a bench trial. MCR 2.613(C); *Trader v Comerica Bank*, 293 Mich App 210, 215; 809 NW2d 429 (2011). A finding is clearly erroneous if, after reviewing the entire record, this Court is definitely and firmly convinced that the trial court made a mistake. *Augustine v Allstate Ins Co*, 292 Mich App 408, 424; 807 NW2d 77 (2011).

### B. ANALYSIS

Defendant argues that the trial court erred by finding, expressly or by implication, that plaintiff did not violate the SDWA. However, during trial, the burden of persuasion rests with the plaintiff. *Widmayer v Leonard*, 422 Mich 280, 290; 373 NW2d 538 (1985). In civil cases, the burden of proof is generally a preponderance of the evidence. *Lima Twp v Bateson*, 302 Mich App 483, 496; 838 NW2d 898 (2013). This standard requires the party to "persuade the fact-finder than it is more likely than not that the proposition is true." *Miller-Davis Co v Ahrens Constr, Inc (On Remand)*, 296 Mich App 56, 71; 817 NW2d 609 (2012), rev'd in part on other grounds 495 Mich 161 (2014).

---

[2] To the extent that plaintiff's argument can also be interpreted as asserting error on the basis that the trial court failed to address plaintiff's equitable interest in the homes, we reject this argument. The jury found that plaintiff had no cause of action for promissory estoppel.

The SDWA provides that, "[b]efore commencing the construction of a waterworks system or an alteration, addition, or improvement to a system, *the supplier of water* shall submit the plans and specifications for the improvements to the department and secure from the department a permit for construction of the same . . . ." MCL 325.1004(6) (emphasis added). The supplier may make requests for minor modifications. MCL 325.1004(8). Additionally, a contractor violates the act when the contractor proceeds without a valid permit or performs work in a manner not in accordance with the permit's plans or specifications. MCL 325.1004(6).

Plaintiff's expert engineer testified that the Michigan Department of Environmental Quality (DEQ) permitting process typically involved developing a site plan to construct a water main. According to plaintiff's expert, the plans are submitted to the DEQ for approval, and after approval, a person may construct the main. The expert further testified that, after construction, there would be "a follow-up with either as-built or notes added to the plans as to the final construction and approval by the municipality," and that typically, the municipality inspects the construction, performs tests, and then turns on the water.

In this case, the permit reflects that Sweet submitted an application to the DEQ to extend a water main along Roller Way for 140 feet. Plaintiff's expert testified that Sweet ultimately had certified that the project had been reviewed and approved as detailed in the application. Defendant's expert engineer also testified that he accessed a permit through the DEQ, which was certified by Sweet, who approved the permit on behalf of defendant. If there was a change from what was permitted, the municipality should have submitted the changes to the DEQ.

Additionally, there was evidence that Sweet actually helped install the water main for its full distance. Roller testified that Sweet measured the distance for the water main, and the distance was roughly 360 feet. Roller's excavating contractor testified that he worked on extending the eight-inch water main from Main Street to a duplex. The contractor testified that Sweet was present as an inspector and supervisor and that Sweet helped with the pipe. Similarly, Roller stated that he was working on the duplex when the line was extended to it, and Sweet supervised the installation. The contractor's laborer testified that he dug a trench about 300 or 350 feet back in Roller's property, and that Sweet worked with him quite a bit. Additionally, defendant charged Roller for 200 feet of eight-inch water main in December 2007. While defendant's president testified that if Sweet had performed a water-main extension, he would have been expected to report it to defendant's council, that does not establish that Sweet did not in fact perform the extension without reporting it. And the fact that defendant charged Roller for more than 140 feet of water main is persuasive evidence that Sweet extended the main.[3]

We conclude that the trial court did not clearly err when it found that defendant had not established that plaintiff violated the SDWA. Because the evidence established that Sweet applied for a permit for 140 feet, but Sweet worked on extending the water main to the duplex

---

[3] It is notable that if Sweet and defendant's contractor installed the first 140 feet of water main, and Sweet and plaintiff's contractor installed an additional 200 feet of water main, the entire distance of water main installed is 340 feet—about the distance that the eight-inch main extends onto plaintiff's property.

with plaintiff's contractor, and Sweet charged Roller for 200 feet of eight-inch water main, we are not definitely and firmly convinced that the trial court made a mistake when it found that plaintiff had not violated the SDWA. Likewise, given that defendant had not established that it was more likely than not plaintiff—rather than defendant—that attached pipes to the water system without a proper permit, we are not definitely and firmly convinced that the trial court made a mistake when it found that defendant had not established that plaintiff violated the Mayville Code.[4]

Affirmed.

/s/ Michael J. Kelly
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle

---

[4] We do not reach defendant's issues concerning the inapplicability of the doctrines of laches and promissory estoppel because defendant did not establish that plaintiff violated the SDWA or Mayville Code.